**Wayne VANDERWIER and Susan Vanderwier, Appellants–Defendants,**

**v.**

**Joshua BAKER and Stephannie Baker, Appellees–Plaintiffs.**

No. 45A03–1003–CC–129.

Court of Appeals of Indiana.

Nov. 15, 2010.

Kevin W. Vanderground, Bratcher & Vanderground, P.C., Merrillville, IN, Attorney for Appellants.

Jennifer Irons, Crown Point, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Wayne and Susan Vanderwier ("the Vanderwiers") appeal the trial court's judgment in favor of Joshua and Stephannie Baker ("the Bakers") on the Bakers' claims for fraud arising from the Bakers' purchase of the Vanderwiers' home. Concluding that trial court properly entered judgment in favor of the Bakers, we affirm.

### Facts and Procedural History

After listing their home for sale, on December 4, 2006, the Vanderwiers completed the statutorily required Sales Disclosure Form. On the form, they noted that during severe rain they had "minor garage seepage." Appellant's App. p. 5. The Bakers entered into a purchase agreement to buy the Vanderwiers' home on January 10, 2007. On that same day, the Bakers signed the Sales Disclosure Form acknowledging receipt of the form. The Bakers had the home independently inspected prior to the February 2007 closing.

On March 23, 2007, the lower level of the home flooded causing and revealing extensive damage to the home as well as the Bakers' personal property. While making repairs, the Bakers discovered water marks on the walls and rotted boards from prior water damage. The damage was not discovered during the home inspection because the Vanderwiers had stacked personal belongings on the floor in front of the damaged walls impeding the inspector's view.

On June 4, 2007, the Bakers filed a complaint against the Vanderwiers in Lake Superior Court and alleged that the Vanderwiers made fraudulent misrepresentations on the Sales Disclosure Form when they stated that there was only minor seepage in the garage and indicated no other water problems. The Bakers also requested punitive damages.

A bench trial was held on July 6, 2009. On February 8, 2010, the trial court issued a judgment in favor of the Bakers. In its findings of fact, the trial court found:

5. At the closing, the plaintiffs specifically asked the defendants whether there were any other water problems and the defendants indicated there were none.

6. Several months after the transaction in this case closed, water came into the residence after a rain resulting in standing water accumulating in the basement, laundry room, bathroom and office.

\* \* \*

8. At trial, the plaintiffs presented the testimony of Christopher Kurowski, the owner of Martin Construction. Mr. Kurowski testified that he was called to the residence to repair the damage caused by water in the plaintiffs' home, and based upon his inspection, if the owners prior to the plaintiffs were in the prop-

erty for longer than one year, they would have experienced water damage. There is no dispute that the defendants were in possession of the property longer than a year before Mr. Kurowski's inspection. This Court finds that, based upon the evidence presented at trial, including Mr. Kurowski's testimony, the defendants knew the statements they made regarding the water problems in the home were false.

Appellant's App. pp. 7–8. The trial court awarded $23,728.92 to the Bakers, which represented the cost to repair the water damage and the damage to their personal belongings. The court declined to award punitive damages. The Vanderwiers now appeal. Additional facts will be provided as necessary.

## Standard of Review

The trial court entered findings of fact and conclusions thereon sua sponte. Findings of fact entered by the trial court sua sponte

> control only as to the issues they cover, while a general judgment standard applies to any issue upon which the trial court has made no findings. In reviewing the judgment, this court must determine whether the evidence supports the findings and whether the findings, in turn, support the conclusion and judgment. We will reverse a judgment only when it is shown to be clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not re-weigh the evidence or assess the credibility of witnesses. In the case of a general judgment, a general judgment may be affirmed on any theory supported by the evidence presented at trial.

*Borovilos Rest. Corp. II v. Lutheran Univ. Ass'n,* 920 N.E.2d 759, 763 (Ind.Ct.App. 2010), *trans. denied* (citations omitted).

## Discussion and Decision

The Vanderwiers argue that the Bakers "had no right to rely upon the representations of the Vanderwiers as to the property's quality when they had a reasonable opportunity to examine the property and judge the quality of the property" for themselves. Appellant's Br. at 3. In response, the Bakers contend that they justifiably relied on the Vanderwiers' fraudulent misrepresentations, and the evidence admitted at trial established that they did not have a reasonable opportunity to inspect the property.

■ To prevail in a cause of action for fraudulent misrepresentation, the Bakers had to prove that 1) the Vanderwiers made false statements of past or existing material facts; 2) the Vanderwiers made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; 3) the Vanderwiers made the statements to induce the Bakers to act upon them; 4) the Bakers justifiably relied and acted upon the statements; and 5) the Bakers suffered injury. *Dickerson v. Strand,* 904 N.E.2d 711, 715 (Ind.Ct.App. 2009) (citing *Verrall v. Machura,* 810 N.E.2d 1159, 1162 (Ind.Ct.App.2004), *trans. denied* ).

Our courts have long held that a "purchaser has no right to rely upon the representations of the vendor as to the quality of the property, where he has a reasonable opportunity of examining the property and

judging for himself as to its qualities." *See Cagney v. Cuson,* 77 Ind. 494, 497 (1881); *see also Dickerson,* 904 N.E.2d at 715; *Pennycuff v. Fetter,* 409 N.E.2d 1179, 1180 (Ind.Ct.App.1980). The earliest cases in this regard are from that time in our history when Indiana was almost exclusively an agrarian state, and pertain to the quality of farm land. But, as Indiana has become more urban, and residential real estate transactions have expanded to include many buyers who are unsophisticated in the techniques of home construction, our court has also stated,

> if a seller undertakes to disclose facts within his knowledge, he must disclose the whole truth without concealing material facts and without doing anything to prevent the other party from making a thorough inspection. For, if in addition to his silence, there is any behavior of the seller which points affirmatively to a suppression of the truth or to a withdrawal or distraction of the other parties' attention to the facts, the concealment becomes fraudulent.

*Ind. Bank & Trust Co. of Martinsville, Ind. v. Perry,* 467 N.E.2d 428, 431 (Ind.Ct. App.1984). *See also Lyons v. McDonald,* 501 N.E.2d 1079 (Ind.Ct.App.1986); *Vetor v. Shockey,* 414 N.E.2d 575, 577 (Ind.Ct. App.1980) ("As for defects known to the vendor of an older home at the time of sale, the tort theories of misrepresentation or fraudulent concealment are alternatives open to the unknowing buyer.").

Moreover, recognizing the importance of a full understanding of the condition of the home being sold to both the sellers and the prospective buyers, in 1993 our General Assembly enacted Indiana Code sections 24–4.6–2–1 to –13, which created a statutory obligation for sellers of certain real estate to complete forms informing prospective buyers of certain types of defects in the real estate and disclosing the known state of the integrity of major construction components and systems prior to closing. This legislation was later recodified at Indiana Code sections 32–21–5–1 to –13.

■ Pursuant to Indiana Code section 32–21–5–7(1) (2002 & Supp.2009), sellers of certain residential real estate are required to provide prospective buyers with a form adopted by the Indiana real estate commission disclosing known conditions of the property's

(A) The foundation.

(B) The mechanical systems.

(C) The roof.

(D) The structure.

(E) The water and sewer systems.

(F) Additions that may require improvements to the sewage disposal system.

(G) Other areas that the Indiana real estate commission determines are appropriate.

"In other words, this statute requires disclosure of the kinds of defects that will most significantly affect the value and use of a home." *Dickerson,* 904 N.E.2d at 717 (Vaidik, J., dissenting).

Section 32–21–5–7(2) also provides that the form must provide a notice to the prospective buyer that contains "substantially the following language: 'The prospective buyer and the owner may wish to obtain professional advice or inspections of the property and provide for appropriate provisions in a contract between them concerning any advice, inspections, defects, or warranties obtained on the property.'" Moreover, section 32–21–5–9 warns that the "disclosure form is not a warranty by the owner or the owner's agent, if any, and the disclosure form may not be used as a substitute for any inspections or warranties that the prospective buyer or owner may later obtain."

Finally, Indiana Code section 32–21–5–11 provides:

The owner *is not liable* for any error, inaccuracy, or omission of any information required to be delivered to the prospective buyer under this chapter if:

(1) the error, inaccuracy, or omission was not within the actual knowledge of the owner or was based on information provided by a public agency or by another person with a professional license or special knowledge who provided a written or oral report or opinion that the owner reasonably believed to be correct; and

(2) the owner was not negligent in obtaining information from a third party and transmitting the information.

I.C. § 32–21–5–11 (2002) (emphasis added).

■ In support of their argument that the Bakers had no right to rely on the Vanderwiers' representations as to the condition of the property, the Vanderwiers cite to *Dickerson v. Strand.* In that case, a panel of our court held that *"even as to fraudulent representations* operating as an inducement to the sale or exchange of property, 'the purchaser has no right to rely upon the representations of the vender as to the quality of the property, where he has a reasonable opportunity of examining the property and judging for himself as to its qualities.'" 904 N.E.2d at 715(quoting *Cagney,* 77 Ind. at 497) (emphasis added).

More recently, another panel of our court addressed this same issue in *Hizer v. Holt,* 937 N.E.2d 1 (Ind.Ct.App.2010). In *Hizer,* we observed that "the *Dickerson* majority did not address the effect that the enactment of Indiana Code chapter 32–21–5 might have on our supreme court's 1881 *Cagney* decision, the import of which is squarely before us here." Op. at 7. We then disagreed with the *Dickerson* court's conclusion and held that "a seller may be held liable for fraudulent misrepresentations made on the Sales Disclosure Form if the buyer can prove the seller's actual knowledge of the defect at the time the form is completed." Op. at 7–8. In so holding, we agreed with Judge Vaidik's dissenting opinion in *Dickerson,* in which Judge Vaidik concluded that our General Assembly "expressly contemplated that the disclosure form statute would create liability for sellers under certain circumstances[.]" *Dickerson,* 904 N.E.2d at 717 (citing I.C. § 32–21–5–11) (Vaidik, J., dissenting).

Finally, after noting the "basic tenet of statutory construction that we will strive to avoid a construction that renders any part of the statute meaningless or superfluous," the *Hizer* court observed that we could not

conceive of any reason that the General Assembly would require sellers to complete the Sales Disclosure Form if sellers cannot be held liable for fraudulently misrepresenting the condition of the property on the form. Importantly, sellers "must complete and sign a disclosure form and submit the form to the prospective buyer before an offer for the sale of the residential real estate is accepted." I.C. § 32–21–5–10. We believe that the General Assembly intended for a prospective buyer to rely on the seller's disclosure of known defects on the property when making his or her offer to purchase the property.

Furthermore, section 32–21–5–11 provides that sellers are not liable for errors, inaccuracies or omissions on the Sales Disclosure Form under certain, limited circumstances, including a lack of actual knowledge of the defect. By implication, therefore, the General Assembly contemplated that sellers can be

held liable for errors, inaccuracies, or omissions on the Sales Disclosure Form if the seller has actual knowledge of the defect. For all of these reasons, we conclude that Indiana Code chapter 32–21–5 abrogates any interpretation of the common law that might allow sellers to make written misrepresentations with impunity regarding the items that must be disclosed to the buyer on the Sales Disclosure Form pursuant to section 32–21–5–7(1).

Op. at 7. Once again, we reject the *Dickerson* panel's holding, and adopt our court's *Hizer* opinion in its entirety.

■ Accordingly, we now consider whether the Bakers presented sufficient evidence to prove that the Vanderwiers had actual knowledge of the defect in the property at the time they completed the Sales Disclosure Form. The evidence presented at trial established that the Vanderwiers impeded both the Bakers' and their inspector's view of the water damage to the walls by stacking their belongings in front of the damaged walls. Tr. pp. 22, 34–35, 45–46. The Bakers' inspector stated that company policy prohibited him from moving the sellers' personal property during an inspection. Moreover, most of the damage would not have been readily apparent because it consisted of rotted wood located behind the paneling and drywall.

At closing, the Vanderwiers were questioned further about the "minor seepage" reported on the Sales Disclosure Form, and they told the Bakers that "a little bit of water would come under the garage door." Tr. p. 9. The Vanderwiers stated that there were no other water problems the Bakers needed to be aware of. Tr. pp. 9–10.

But the Vanderwiers had experienced ongoing water problems while they owned the home that were more severe than the "minor garage seepage" represented on the Sales Disclosure Form. Specifically, the Bakers contractor testified that there was "wet rot, which is a fungus on lumber causing it to deteriorate." Tr. p. 63. He stated that "it doesn't happen overnight." *Id.* He found wet rot "continuing up the studs of that exterior wall, which ... indicates that it's had water for a period of time or on several occasions, not just on one occasion." Tr. p. 64. The contractor testified that a person living in the house for longer than one year would have "experienced some type of visible water." Tr. p. 65.

Furthermore, a neighboring property owner testified that all of the property owners on the street have water problems when it rains. Tr. p. 70. Susan Vanderwier admitted that although they attempted to correct the water seepage issues, they still had problems with seepage in the laundry room and garage. Tr. pp. 87–88.

This evidence supports the trial court's judgment that the Bakers established, by a preponderance of the evidence, that the Vanderwiers made fraudulent misrepresentations on the Sales Disclosure Form, and that the Bakers justifiably relied on the Vanderwiers' fraudulent disclosure of only "minor garage seepage." For all of these reasons, we affirm the trial court's judgment in favor of the Bakers.

Affirmed.

BAKER, C.J., and NAJAM, J., concur.