Deborah J. WISE, Appellant–Petitioner,

v.

David T. HAYS and Amanda G. Hays,
Appellees–Respondents.

No. 76A03–1006–PL–323.

Court of Appeals of Indiana.

Feb. 15, 2011.

John J. Schwarz, II, Cresslaw Group, PC, Angola, IN, Attorney for Appellant.

Joshua A. Burkhardt, Beers Mallers Backs & Salin, LLP, Fort Wayne, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

A buyer filed a complaint against the sellers of real estate for fraud and negligence. The sellers filed an Indiana Trial Rule 12(B)(6) motion to dismiss for failure to state a claim. The buyer now appeals the trial court's grant of the motion. Because the trial court relied on matters outside the pleading, we treat the sellers' motion as one for summary judgment. Concluding that genuine issues of material fact exist as to whether the sellers made fraudulent misrepresentations on the sales disclosure form required by statute, we reverse the trial court's dismissal order and remand for proceedings consistent with this opinion.

### Facts and Procedural History

In 2007, Deborah J. Wise and her husband Travis were interested in purchasing a Wolcottville residence and surrounding real estate from David T. Hays and Amanda G. Hays. The property consisted of around sixteen and a half acres. After viewing the property, Wise emailed specific inquiries about the residence and surrounding real estate. One of her inquiries involved whether the wetlands would affect development of the property:

> Where exactly is the wetlands designation on the property? How many acres of wetlands are there compared to "livable" ground? Are the wetlands registered and/or recognized by city/state/ army corps? ... [I]s any of it buildable for a possible driveway access from Cty Line Rd? Are the wetlands not usable at all? Property has a survey on file?

Appellant's App. p. 28. The Hayses allegedly responded that the property could be developed for additional residential housing. *Id.* at 20.

Wise and Travis decided to purchase the property and entered into a purchase agreement in March 2007. The purchase agreement indicated that Wise and Travis reserved the right to have the property inspected and that they could terminate the agreement if the inspection revealed a major defect that the Hayses were unwilling or unable to remedy.

The purchase agreement also indicated that Wise and Travis had received a Seller's Residential Real Estate Sales Disclosure Form. On the sales disclosure form, to the question, "Are there any structural problems with the building?" the Hayses

marked the "No" box. *Id.* at 54 (Question G6). To the question, "Have you received any notices by any governmental or quasi-governmental agencies affecting this property?" the Hayses marked the "No" box. *Id.* (Question G7). To the question, "Have any substantial additions or alterations been made without a required building permit?" the Hayses marked the "No" box. *Id.* (Question G9). To the question, "Is the property in a flood plain?" the Hayses marked the "No" box. *Id.* (Question G14).

Wise and Travis purchased the property following inspection of the residence by a licensed home inspector. The warranty deed transferring title to the property was recorded in April 2007.

Sometime after the purchase, Wise began to have concerns about the residence and surrounding real estate. She consequently obtained copies of correspondences from the enforcement branch of the Army Corps of Engineers to David Hays. In a June 2003 letter, the Army Corps of Engineers informed David that "the sidecasting of spoil material from an excavated channel into wetlands" on his property was a violation of the Clean Water Act. *Id.* at 30. The letter also indicated that the wetlands on the property may affect any development of it:

> During the site meeting, you also asked about a proposed development. As you were informed, much of the area that you are currently proposing to develop is currently wetlands. As of the site visit, you did not know where the proposed road would be placed or what area the area of impact to waters of the U.S. would be. Before you begin any development, you will need to have a wetland delineation performed and verified by the Corps of Engineers. Once the boundaries of the wetland area [are] identified, you will be able to overlay your proposed development and assess impacts to wetlands and other waters of the U.S. After the impacts are calculated, you can apply for a permit for the proposed impacts. Please be aware, as was discussed on June 5, 2003, that in order for a permit to be granted, it [is] likely that compensatory mitigation will be required for your proposed project.

*Id.* at 31. In a November 2003 letter, the Army Corps of Engineers acknowledged receipt of David's permit application to leave the spoil material in place until it could be removed during the winter freeze and informed David that it would visit the property in March 2004 to verify that he had removed the spoil material and restored the area to its original grade.

After the purchase, Wise also hired a professional engineer to inspect the residence. The subsequent report revealed numerous code violations and structural problems. For example, the professional engineer noted problems with the walls in the master bedroom:

> The drywall joint in the Northeast corner was noticeably cracked. [Travis] commented that on a windy night that you could feel the wall move. I pressed outward against the exterior wall near that wall junction and could definitely feel the wall move and see the drywall joint flex as I pushed against it with less than approximately 50 pounds force. The fact that I could do this means that the wall corners are not structurally tied together as required by code.

*Id.* at 61–62. Other examples of problems with the residence included "a noticeable bounce to the [upstairs family room] floor" when walking across the room, *id.* at 59, and a leak in the shower floor that "seems to have been there for a long period of time as evidenced by the black staining of the joists in the crawlspace area of the shower drain," *id.* at 62.

Wise filed a complaint against the Hayses for fraud and negligence. The complaint alleged, among other things, that the Hayses knowingly misrepresented certain items on the sales disclosure form. Wise attached the following to the complaint: (1) Wise's email with specific inquiries about the property and handwritten notes of the responses she received; (2) the June and November 2003 letters from the Army Corps of Engineers to David; (3) the purchase agreement; (4) the home inspection report performed by a licensed home inspector before the purchase of the property; (5) the warranty deed transferring title to the property to Wise and Travis; (6) the Seller's Residential Real Estate Sales Disclosure Form; and (7) the home inspection report performed by a professional engineer after the purchase of the property.

The Hayses filed a Trial Rule 12(B)(6) motion to dismiss for failure to state a claim. In the memorandum supporting their motion, they argued in large part that Wise had no right to rely on their representations when she had a reasonable opportunity to inspect the property herself. The Hayses cited the exhibits attached to Wise's complaint.

After a hearing, the trial court granted the Hayses' motion to dismiss. The order also cited the exhibits attached to Wise's complaint.

Wise filed a motion to amend the complaint pursuant to Trial Rule 12(B). She then filed a motion to correct error. The trial court held a hearing on both motions. By passage of time, the motion to correct error was deemed denied.

Wise then filed a motion for a ruling or a status conference, a motion to certify the trial court's order for interlocutory appeal, and a notice of appeal. The trial court set a date for a status conference and a hearing on the motion to certify. Although the chronological case summary provided on appeal ends at this point, *see id.* at 5–7; Appellees' App. p. 7–8, Wise's brief states:

> [A] status conference was held wherea[t] counsel for Wise inquired with the Trial Court as to whether or not the Trial Court had accepted Wise's Second Amended Complaint, so as to gain an understanding as to whether the proper appeal route should be interlocutory or direct appeal. Judge William Fee indicated that since the case had been appealed, he was no longer the judge, and thus no direction could be given by the Trial Court.

Appellant's Br. p. 4. This factual account is not refuted by the Hayses. *See* Appellees' Br. p. 2.

Wise now appeals the order of dismissal.

## Discussion and Decision

Wise contends that the trial court erred by granting the Hayses' motion to dismiss. The Hayses point out that this Court may not have jurisdiction over this appeal. We first address the jurisdictional issue.

### I. Jurisdiction

Specifically, the Hayses claim that because Wise's motion to amend the complaint pursuant to Trial Rule 12(B) "was not ruled upon by the trial court and was pending when Wise filed her notice of appeal from the trial court," she "should have obtained certification from the trial court to proceed with an interlocutory appeal." Appellees' Br. p. 2 n.2. Wise's notice of appeal, however, states that she appeals from a final judgment. Appellant's App. p. 189.

If Wise does indeed appeal from a final judgment, then this Court has jurisdiction over the appeal. *See* Ind. Appellate Rule 5(A) (providing that, generally, this Court has jurisdiction in all appeals from final judgments). A judgment that disposes of

all claims as to all parties is a final judgment. Ind. Appellate Rule 2(H)(1).

To determine whether the trial court's order was a final judgment, we must first consider whether the trial court treated the Hayses' motion as a motion to dismiss for failure to state a claim under Indiana Trial Rule 12(B)(6) or whether the motion was essentially converted into one for summary judgment under Indiana Trial Rule 56(C). Trial Rule 12(B) states:

> If, on a [12(B)(6)] motion, ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The operation of Trial Rule 12(B) is "well known" and provides a "clear mandate" in situations where a trial court considers matters outside the pleading in a 12(B)(6) motion. *Duran v. Komyatte*, 490 N.E.2d 388, 391 (Ind.Ct.App.1986), *reh'g denied, trans. denied.*

■ Wise submitted a number of exhibits with her amended complaint. *See* Appellant's App. p. 28–130 (Exs.A–I). In the memorandum supporting their motion to dismiss, the Hayses cited Wise's complaint as well as the attached exhibits, thus directing the trial court to matters outside the pleading. Further, it is clear from the trial court's citation to these exhibits in its dismissal order that it considered these exhibits. By considering matters outside the pleading, the trial court in effect converted the motion to dismiss into one for summary judgment and essentially ruled in favor of the Hayses on summary judgment.

The trial court's order disposed of all claims as to all parties and was thus a final judgment. Because the final judgment was a ruling on summary judgment, the fact that Wise filed a motion to amend the complaint pursuant to Trial Rule 12(B) is of no moment. It could not serve to resurrect her complaint. We thus have jurisdiction over this appeal.

## II. Summary Judgment

Wise contends that the trial court erred by granting the Hayses' motion to dismiss. However, because it is clear from the dismissal order that matters outside the pleading were considered by the trial court, we treat this appeal as if it comes from an order on summary judgment. *See Mears v. Lake Cnty. Council*, 709 N.E.2d 747, 748 (Ind.Ct.App.1999); *see also Pallett v. State*, 901 N.E.2d 611, 613 (Ind.Ct.App.2009) (where Pallett filed several exhibits with his petition for writ of habeas corpus, parole board relied on Pallett's petition as well as attached exhibits in its motion to dismiss and memorandum in support, and the trial court did not exclude the exhibits, summary judgment standard employed on review of court's grant of motion to dismiss), *trans. denied.* We thus construe Wise's argument to be that the trial court erred by granting summary judgment in favor of the Hayses on Wise's claim of fraud because the Hayses misrepresented the condition of the property.[1] In response, the Hayses argue that Wise had no right to rely on the Hayses' representations because Wise had a reasonable opportunity to inspect the property.

When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a

---

1. Wise does not appeal the entry of summary judgment as to her negligence claim.

judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269–70 (Ind.2009). All facts established by the designated evidence and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind.2007).

■ To prevail in a cause of action for fraudulent misrepresentation, Wise must demonstrate that: (1) the Hayses made false statements of past or existing material facts; (2) the Hayses made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; (3) the Hayses made the statements to induce Wise to act upon them; (4) Wise justifiably relied and acted upon the statements; and (5) Wise suffered injury. *See Hizer v. Holt*, 937 N.E.2d 1, 5 (Ind.Ct.App.2010).

In 1881, our Supreme Court held that a "purchaser has no right to rely upon the representations of the vendor as to the quality of the property, where he has a reasonable opportunity of examining the property and judging for himself as to its qualities." *Cagney v. Cuson*, 77 Ind. 494, 497 (1881). Our courts have long followed this rule. *See, e.g., Shepard v. Goben*, 142 Ind. 318, 322, 39 N.E. 506, 507 (1895); *Dickerson v. Strand*, 904 N.E.2d 711, 715 (Ind.Ct.App.2009), *reh'g denied; Pennycuff v. Fetter*, 409 N.E.2d 1179, 1180 (Ind. Ct.App.1980); *Anderson Drive–In Theatre, Inc. v. Kirkpatrick*, 123 Ind.App. 388, 392, 110 N.E.2d 506, 508 (1953).

■ Nevertheless, in some cases, we have recognized that a seller has the duty to disclose material facts about the property "where the buyer makes inquiries about

a condition on, the qualities of, or the characteristics of the property." *Fimbel v. DeClark*, 695 N.E.2d 125, 127 (Ind.Ct.App. 1998), *trans. denied*. Once a seller undertakes to disclose facts within his or her knowledge, the seller must disclose the whole truth:

> [I]f a seller undertakes to disclose facts within his knowledge, he must disclose the whole truth without concealing material facts and without doing anything to prevent the other party from making a thorough inspection. For, if in addition to his silence, there is any behavior of the seller which points affirmatively to a suppression of the truth or to a withdrawal or distraction of the other parties' attention to the facts, the concealment becomes fraudulent.

*Ind. Bank & Trust Co. of Martinsville, Ind. v. Perry*, 467 N.E.2d 428, 431 (Ind.Ct. App.1984); *see also Thompson v. Best*, 478 N.E.2d 79, 84 (Ind.Ct.App.1985) ("One cannot be allowed, under the law, to *partially* disclose the facts as he knows them to be, yet create a false impression in the mind of the hearer by failing to fully reveal the true state of affairs."), *reh'g denied, trans. denied*.

In 1993, our legislature created a statutory obligation for sellers of certain residential real estate to complete disclosure forms informing prospective buyers of certain types of defects in the property. *See* P.L. 209–1993, Sec. 1. The subject of residential real estate sales disclosures has since been recodified at Indiana Code chapter 32–21–5. Sellers of certain residential real estate must complete and sign a disclosure form and submit the form to a prospective buyer before an offer is accepted.[2] Ind.Code § 32–21–5–10(a).

---

2. Chapter 32–21–5 applies to a sale of residential real estate containing not more than four residential dwelling units. Ind.Code

§ 32–21–5–1(a). Although "residential real estate" is not defined in Title 32, it is defined in other areas of the Indiana Code as any real

Indiana Code section 32–21–5–7 provides in pertinent part:

> The Indiana real estate commission . . . shall adopt a specific disclosure form that contains the following:
>
> (1) Disclosure by the owner of the known condition of the following:
>
> (A) The foundation.
>
> (B) The mechanical systems.
>
> (C) The roof.
>
> (D) The structure.
>
> (E) The water and sewer systems.
>
> (F) Additions that may require improvements to the sewage disposal system.
>
> (G) Other areas that the Indiana real estate commission determines are appropriate.

Pursuant to this authority, the Indiana Real Estate Commission has adopted a Seller's Residential Real Estate Sales Disclosure Form. *See* 876 Ind. Admin. Code 1–4–2.

Chapter 32–21–5 also provides that a seller is not liable for any error, inaccuracy, or omission on the sales disclosure form if the error, inaccuracy, or omission was not within the seller's actual knowledge. Ind.Code § 32–21–5–11(1). By implication, then, the legislature contemplated that sellers can be held liable for an error, inaccuracy, or omission on the sales disclosure form if the seller has actual knowledge of the defect. *Hizer,* 937 N.E.2d at 7.

The effect of the sales disclosure form statutes was recently discussed in this author's dissenting opinion in *Dickerson v. Strand,* 904 N.E.2d 711, 716–18 (Ind.Ct. App.2009) (Vaidik, J., dissenting), *reh'g denied.* The sellers in that case indicated on the sales disclosure form that there were no structural problems with the house. *Id.* at 713. After purchase, the buyers discovered extensive structural damage due to termites. *Id.* at 714. The trial court granted summary judgment in favor of the sellers on the buyers' complaint for fraud. *Id.* On appeal, the majority relied on our Supreme Court's 1881 *Cagney* decision and held that, "even as to *fraudulent* representations operating as an inducement to the sale or exchange of property, 'the purchaser has no right to rely upon the representations of the vendor as to the quality of the property, where he has a reasonable opportunity of examining the property and judging for himself as to its qualities.' " *Id.* at 715 (quoting *Cagney,* 77 Ind. at 497). The majority affirmed the summary judgment ruling in favor of the sellers on the buyers' fraud claim. *Id.* at 716.

This author's dissent, however, noted the sales disclosure form statutes and stated that our legislature "expressly contemplated that the disclosure form statute would create liability for sellers under certain circumstances." *Id.* at 717 (Vaidik, J., dissenting). The dissent concluded that, regarding those transactions covered by Chapter 32–21–5, our sales disclosure form statutes abrogate the common law rule that a buyer cannot rely upon a seller's representations regarding the absence of defects in those items included in Section 32–21–5–7(1) and place the onus on a seller to refrain from knowingly making misrepresentations about those conditions. *Id.*

Two panels of this Court have since agreed with the *Dickerson* dissent. *See Vanderwier v. Baker,* 937 N.E.2d 396, 401 (Ind.Ct.App.2010); *Hizer,* 937 N.E.2d at 7–8. Both of these opinions were issued

property that is located in Indiana and on which there is located or intended to be constructed a dwelling. Ind.Code §§ 24–4.4–1–301(32), 24–4.5–1–301.5(40); *see also* 750 Ind. Admin. Code 9–1–1(31).

after briefing was completed in this case. The sellers in *Hizer* completed a sales disclosure form indicating that the plumbing and well were not defective, that there were no hazardous conditions on the property, including no mold, and that there were no moisture and/or water problems in the basement. 937 N.E.2d at 2. After closing, the buyers discovered several problems with the home, including a faulty irrigation system, an inoperable water holding tank internal to the home, the presence of extensive mold in the attic, polybutal water supply pipe throughout the house which was allegedly subject to recall, and a crack in the basement wall through which water was leaking into the house. *Id.* Regarding the basement wall, the buyers discovered that someone had attempted to patch the crack, that a finished wall had been constructed over the crack, and that someone had spread a sealant over the Styrofoam sheeting attached on the outside of the basement walls. *Id.* This Court stated:

> [W]e conclude that Indiana Code chapter 32–21–5 abrogates any interpretation of the common law that might allow sellers to make written misrepresentations with impunity regarding the items that must be disclosed to the buyer on the Sales Disclosure Form pursuant to section 32–21–5–7(1). Moreover, we disagree with our court's conclusion in *Dickerson* and hold that a seller may be held liable for fraudulent misrepresentations made on the Sales Disclosure Form if the buyer can prove the seller's actual knowledge of the defect at the time the form is completed.

*Id.* at 7–8. We reversed and remanded the trial court's summary judgment ruling in favor of the sellers because there were genuine issues of material fact as to whether the sellers had actual knowledge of the defects at the time they completed the sales disclosure form. *Id.* at 8.

The sellers in *Vanderwier* completed a sales disclosure form noting "minor garage seepage" during severe rain. 937 N.E.2d at 397. After closing, the lower level of the home flooded. *Id.* While making repairs, the buyers discovered water marks on the walls and rotted boards from prior water damage. *Id.* The trial court ruled in favor of the buyers on their claims of fraudulent misrepresentation. *Id.* at 398. On appeal, this Court again rejected the *Dickerson* majority's holding and adopted the *Hizer* opinion in its entirety. *Id.* at 401. Finding sufficient evidence to prove that the sellers had actual knowledge of the defect in the property at the time they completed the sales disclosure form, we affirmed the trial court's ruling in favor of the buyers. *Id.*; *see also Rex E. Breeden Revocable Trust v. Hoffmeister–Repp*, 941 N.E.2d 1045, 1054 (Ind.Ct.App.2010) (fraud claim fails where buyer did not show seller had actual knowledge of moisture problems in duct work at the time she completed sales disclosure form).

■ We agree with the *Dickerson* dissent, *Hizer,* and *Vanderwier.* For transactions covered by Chapter 32–21–5, a seller may be liable for any misrepresentation on the sales disclosure form if the seller had actual knowledge of that misrepresentation at the time the form was completed.

■ Here, neither party acknowledges the sales disclosure form statutes that have been in effect since 1993. Both parties instead rely on the common law rule that a buyer has no right to rely on the seller's representations as to the quality of the property where the buyer has a reasonable opportunity of examining the property and judging for herself as to its qualities. Although *Dickerson* reaffirmed the common law rule despite evidence that the sellers in that case made misrepresentations on the sales disclosure form, *Hizer*

and *Vanderwier* have since held that a seller may be liable for any misrepresentation on the sales disclosure form if the seller had actual knowledge of that misrepresentation at the time the form was completed. With respect to new rules announced through judicial decisions, the rule generally will be applied to all cases pending on direct appeal at the time of the decision. *Sneed v. Associated Group Ins.*, 663 N.E.2d 789, 795 (Ind.Ct.App.1996). Because *Hizer* and *Vanderwier* were issued while this case was pending on direct appeal, we apply the rule announced in those cases here.

■ The designated evidence includes the sales disclosure form completed by the Hayses. In it, they indicated that there were no structural problems with the building, that they had not received any notices from any governmental or quasi-governmental agencies affecting the property, and that the property was not in a flood plain.[3] The form provided by the Indiana Real Estate Commission requires these questions. *See* 876 I.A.C. 1–4–2.

The designated evidence includes the professional engineer's report indicating numerous code violations and structural problems with the residence, the June 2003 letter from the Army Corps of Engineers to David indicating that wetlands associated with Witmer Lake are located on the property and that he had violated the Clean Water Act by sidecasting spoil material into wetlands, the November 2003 letter from the Army Corps of Engineers to David acknowledging receipt of his permit application to leave the spoil material in place until it could be removed during the winter freeze, and the warranty deed showing that a water channel runs along the property.

This evidence establishes a genuine issue of material fact as to whether the Hayses had actual knowledge of the structural problems with the residence at the time they completed the sales disclosure form. This evidence also establishes a genuine issue of material fact as to whether the property lies in a flood plain and, if so, whether the Hayses had actual knowledge of that at the time they completed the sales disclosure form. Finally, the evidence clearly establishes that the Hayses were aware at the time they completed the sales disclosure form that they had received notices from the Army Corps of Engineers regarding the property.[4]

---

3. The Hayses point out that Wise's complaint fails to specifically allege that they misrepresented on the sales disclosure form that there were no structural problems with the building and that they had not received any notices from any governmental or quasi-governmental agencies affecting the property. For purposes of this appeal, it is sufficient that Wise: (1) alleged in her complaint that the Hayses knew but failed to disclose that the residence contained numerous structural defects, Appellant's App. p. 24 (paragraphs 46–47), failed to disclose that the Army Corps of Engineers informed them that the property could not be developed, *id.* at 23 (paragraph 35), and failed to disclose that they had violated the law by conducting dredging activities on the property, *id.* (paragraph 36) and (2) attached a copy of the sales disclosure form completed by the Hayses to her complaint.

4. The Hayses also indicated on the sales disclosure form that no substantial additions or alterations had been made without a required building permit. Wise notes on appeal that "almost all of the necessary permits to construct the residence were never obtained by [the] Hays[es]." Appellant's Br. p. 9. We discern nothing in the designated evidence to support this claim. *See City of New Albany v. Cotner*, 919 N.E.2d 125, 133 (Ind.Ct.App. 2009) ("On appeal, the non-moving party bears the burden of persuasion and must specifically point to the disputed material facts *and the designated evidence pertaining thereto.*"), *reh'g denied, trans. denied.* Rather, the professional engineer's inspection report states that the house was built using a permit obtained in 2000 but that the required final

The trial court therefore erred by entering summary judgment in favor of the Hayses on Wise's fraud claim.[5] We reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

ROBB, C.J., AND MAY, J., concur.

inspections were not obtained. Appellant's App. p. 56.

5. We emphasize that the sales disclosure form statutes apply here because the Hayses sold residential real estate containing not more than four residential dwelling units. *See* Ind. Code § 32–21–5–1(a). The sales disclosure form statutes would not apply if the property constituted commercial real estate.