**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 30 2012, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**KATHERINE A. BROWN-HENRY**
Cline Farrell Christie & Lee, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**SHAUN T. OLSEN**
Weiss & Schmidgall, P.C.
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BARBARA A. JOHNSON and WILLIAM T. JOHNSON, both individually and as trustees of the BARBARA A. JOHNSON LIVING TRUST DATED 12-17-1996, | ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 45A04-1111-CT-610 |
| JOSEPH WYSOCKI and M. CARMEN WYSOCKI, | ) ) | |
| Appellees-Plaintiffs. | ) ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Gerald N. Svetanoff, Judge
Cause No. 45D04-0805-CT-00092

**July 30, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

Barbara and William Johnson, individually and as trustees of the Barbara A. Johnson Living Trust ("the Trust") (collectively "the Johnsons"), appeal the trial court's judgment against them and in favor of Joseph and M. Carmen Wysocki.

We affirm in part and reverse in part.

## ISSUES

The Johnsons present two issues for our review, one of which is dispositive:

I.    Whether the trial court erred by entering judgment in favor of the Wysockis on their claim of fraudulent misrepresentation.

On cross-appeal, the Wysockis present one issue, which we restate as:

II.    Whether the trial court abused its discretion by not awarding attorney's fees and costs to the Wysockis pursuant to the Crime Victims Relief Act.

## FACTS AND PROCEDURAL HISTORY

In 1973, Barbara and William purchased the home that is the subject of this lawsuit. At that time, the home was newly constructed, and Barbara and William were the first owners. In the years following, improvements were done to the home. Some of the improvements were done by William and some were done by contractors.

In 1996, as part of their estate planning, William and Barbara transferred the house into the Trust. William and Barbara are co-trustees of the Trust, and Barbara is the settlor of the Trust. In 2006, the house was listed for sale, and a residential real estate sales disclosure form was filled out and signed by Barbara. In filling out the sales disclosure

2

form, Barbara indicated that there were no moisture and/or water problems in the basement, crawl space area, or any other area, that there were no structural problems with the building, that the roof did not leak, that there were no foundation problems with the improvements, and that there were no violations of zoning, building codes, or restrictive covenants.

In July 2006, the Wysockis viewed the house and received a copy of the sales disclosure form. Following negotiations, the Wysockis purchased the property, and prior to closing they had the home independently inspected. In his report, the inspector noted that there were no electrical, mechanical, or plumbing items not operating and no roof leaks or major deficiencies. The inspector's report further states that the home appeared to be in satisfactory condition, and he noted some exceptions such as a cracked tile in one of the bathrooms. The report also indicates that the inspector got on the roof to perform his roof inspection, went into the garage attic, and entered the second floor attic as part of his inspection.

After taking possession, the Wysockis encountered several problems with the house. In particular, the Wysockis noticed electrical problems beneath the screened-in porch, water puddling in the garage and pooling on the front porch and in the ceiling above the front porch, a deflected front porch beam, and problems with the support posts of the screened-in porch. In 2008, the Wysockis filed a lawsuit against William and Barbara, individually and as trustees of the Trust, claiming fraud, breach of contract, and conversion. The Johnsons filed a motion for summary judgment, which the trial court

granted as to the Wysockis' claims of breach of contract and conversion. Following a bench trial on the claim of fraud, the trial court found William and Barbara liable both individually and as trustees of the Trust with regard to the electrical service lines underneath the screened-in porch, the roofing of the front porch, the front beam of the front porch, and the support beams for the screened-in porch. It is from this judgment that the Johnsons now appeal.

DISCUSSION AND DECISION

I. FRAUDULENT MISREPRESENTATION

Here, the trial court entered findings of fact and conclusions of law. When the trial court enters findings of fact and conclusions of law, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings and, second, whether the findings support the judgment. *S.C. Nestel, Inc. v. Future Constr., Inc.*, 836 N.E.2d 445, 449 (Ind. Ct. App. 2005). The trial court's findings and conclusions will be set aside only if they are clearly erroneous. *Id.* "Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them." *St. John Town Bd. v. Lambert*, 725 N.E.2d 507, 518 (Ind. Ct. App. 2000). A judgment is clearly erroneous when it is not supported by the findings of fact. *Id.* Put another way, a judgment is clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *S.C. Nestel, Inc.*, 836 N.E.2d at 449. In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *St.*

4

*John Town Bd.*, 725 N.E.2d at 518.  Moreover, we will not reweigh the evidence or assess witness credibility.  *S.C. Nestel, Inc.*, 836 N.E.2d at 449.

In its order, the court found the following pertinent facts:

11. This Court has considered all of the evidence presented to it by the parties and has weighed that evidence as well as the credibility of the witnesses testifying in this case.  This Court has also considered the Indiana statutory law and common law applicable to this claim.  The Court finds that the issues for which complaint has been made here existed for some time and should have been obvious to the Johnsons prior to the time that they sold the Property.  After having thoroughly weighed all of the evidence in this case, this Court concludes that the Wysockis have established by a preponderance of the evidence that the Defendants are liable to them for the following defects in the Property:

    (a)    The repair of the electrical service lines below the screened-in-deck;
    (b)    Repairs to the roofing of the front porch;
    (c)    Repair to the front beam; and
    (d)    Repair to the rear screened-in-room support beams.

Appellants' App. pp. 15-16.  The court then concluded that, with regard to these items, the Wysockis have incurred damages in the amount of $13,805.95 and entered judgment against the Johnsons in that amount.

The Johnsons contend that the trial court erred by entering judgment in favor of the Wysockis because they failed to establish all of the elements necessary for their claim of fraudulent misrepresentation, particularly the Johnsons' knowledge that their statements were false.  In addition, the Johnsons argue that Indiana Code section 32-21-5-11 (2002) precludes their liability for errors, inaccuracies, or omissions that were not within Barbara's actual knowledge at the time she signed the sales disclosure form.

5

To prevail in a cause of action for fraudulent misrepresentation, the Wysockis must prove that 1) the Johnsons made false statements of past or existing material facts; 2) the Johnsons made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; 3) the Johnsons made the statements to induce the Wysockis to act upon them; 4) the Wysockis justifiably relied and acted upon the statements; and 5) the Wysockis suffered injury. *See Vanderwier v. Baker*, 937 N.E.2d 396, 398 (Ind. Ct. App. 2010).

Our courts have long followed the rule that a purchaser has no right to rely upon the representations of the seller as to the quality of the property, where he or she has a reasonable opportunity of examining the property and judging its qualities for himself or herself. *See Cagney v. Cuson*, 77 Ind. 494, 497 (1881); *Dickerson v. Strand*, 904 N.E.2d 711, 715 (Ind. Ct. App. 2009). Nevertheless, in some cases where the buyer makes inquiries about a condition on, the qualities of, or the characteristics of the property, the seller has a duty to disclose material facts about the property. *Wise v. Hays*, 943 N.E.2d 835, 840 (Ind. Ct. App. 2011). Once the seller undertakes to disclose facts within his or her knowledge, the seller must disclose the whole truth. *Id.*

In 1993 our legislature created a statutory obligation, now codified as Indiana Code chapter 32-21-5, for sellers of certain residential real estate to complete disclosure forms informing prospective buyers of certain types of defects in the property. The disclosure form must be completed and signed and then submitted to a prospective buyer before an offer is accepted. *See* Ind. Code § 32-21-5-10(a) (2002). This chapter also

6

provides that a seller is not liable for any error, inaccuracy, or omission on the sales disclosure form if the error, inaccuracy, or omission was not within the seller's actual knowledge. *See* Ind. Code § 32-21-5-11(1).

Recent cases show a split on this Court regarding the effect of Indiana Code chapter 32-21-5. In *Dickerson*, the majority affirmed summary judgment for the sellers on the buyers' fraud claim citing *Cagney*, despite evidence the sellers made misrepresentations on the sales disclosure form. Judge Vaidik dissented and noted that for transactions covered by Indiana Code chapter 32-21-5, the sales disclosure form statutes abrogate the common law rule of *Cagney* and place the burden on the seller to refrain from knowingly making misrepresentations about the condition of the property. More recently, several panels of this Court have agreed with the *Dickerson* dissent. *See Hizer v. Holt*, 937 N.E.2d 1, 7-8 (Ind. Ct. App. 2010) (disagreeing with Court's conclusion in *Dickerson* and holding that seller may be held liable for fraudulent misrepresentations made on sales disclosure form if buyer can prove seller's actual knowledge of defect at time form is completed); *Vanderwier*, 937 N.E.2d at 401 (rejecting holding of *Dickerson* and adopting *Hizer* opinion in its entirety); and *Wise*, 943 N.E.2d at 841-42 (agreeing with *Dickerson* dissent, *Hizer*, and *Vanderwier* and holding that for transactions covered by Indiana Code chapter 32-21-5, seller may be liable for any misrepresentation on sales disclosure form if seller had actual knowledge of misrepresentation at time form was completed). Likewise, we agree that for transactions covered by Indiana Code chapter 32-21-5, a seller may be liable for any

7

misrepresentation on the sales disclosure form if the seller had actual knowledge of that misrepresentation at the time the form was completed.

Accordingly, we now consider whether the Wysockis presented sufficient evidence to prove that the Johnsons had actual knowledge of the defects in the property at the time they completed the sales disclosure form. With regard to the electric lines below the screened-in porch, the evidence shows that the bottom of the porch was covered with cedar siding and skirting so that the area underneath the porch was not easily accessible. Joseph testified that he went underneath the porch and found wires lying in the dirt. However, William testified that he last saw the electrical junction box underneath the porch in 1976 or 1977 and that it was attached to the joists just as the contractor had installed it. Barbara testified that she had never gone underneath the screened-in porch.

The evidence concerning William and Barbara's knowledge of the front porch roof leak consists of their testimony that they never had water in the garage or on the front porch and that neither of them had any knowledge of leaking, moisture problems, or water problems with the front porch roof or garage ceiling. In addition, Barbara testified that upon completion, the front porch passed inspection by a city inspector. She also testified that she had no knowledge that the front porch was not built in accordance with the building codes or town ordinances. William testified that he noticed a gap in one corner of the garage where the ceiling drywall met the wall so he attempted to put screws in the drywall. He stated that the screws went through the drywall so he left it. He further testified that there were no signs of water damage or of a roof leak at the time he

8

placed the screws. Likewise, both William and Barbara testified that they had no knowledge of a deflected beam on the front porch roof.

With regard to the foundation supports for the screened-in porch, Joseph testified that there was no concrete under the posts and that the posts went only seven inches into the ground. However, William testified that in 1974 he built the deck that eventually became the floor of the screened-in porch. He testified that he put the foundation posts into the ground forty inches deep and poured concrete into the hole. He stated that a few years later he added steel posts, not because the porch needed extra support but because he "kind of go[es] overboard" on things. Tr. p. 67. In addition, Barbara testified: "He overdoes everything. If one is good enough, two is better. He literally does wear suspenders and a belt at the same time. So for his own piece [sic] of mind, he added those auxiliary jacks to the main supports, in addition to the main supports." *Id.* at 504. Barbara also testified that in 1975 contractors for the screened-in porch indicated that the porch floor was fine. In response to a question whether anyone had looked at the porch floor and indicated it was structurally sound since William had added the auxiliary jacks, she responded, "We had no problems, so we had no reason to have anybody in." *Id.* at 524. William and Barbara both testified that they experienced no problems with the porch moving and that they had no knowledge of any structural problems with the porch floor or that the floor of the porch violated any building codes or town ordinances.

9

Although it appears that there were items in the house that needed attention, the evidence does not support the trial court's judgment that the Wysockis established by a preponderance of the evidence that the Johnsons made fraudulent misrepresentations.

Moreover, in its judgment, the trial court did not find that the Johnsons had actual knowledge of the claimed defects; rather, the trial court merely found that there were issues that "should have been obvious to the Johnsons prior to the time that they sold the Property." Appellants' App. p. 15. In order to impose liability upon the Johnsons, the Wysockis must show that the error, inaccuracy, or omission was within the *actual knowledge* of the Johnsons. *See* Ind. Code § 32-21-5-11(1). Evidence showing that defects "should have been obvious" is not sufficient. *See Hizer*, 937 N.E.2d at 7-8 (holding that a seller may be held liable for fraudulent misrepresentations made on the sales disclosure form if the buyer can prove the seller's actual knowledge of the defect at the time the form is completed).

Therefore, based upon the evidence before us, we conclude that the Wysockis failed to show that the Johnsons had actual knowledge of the defects claimed by the Wysockis at the time Barbara completed the sales disclosure form. The trial court thus erred by entering judgment for the Wysockis on their claim of fraudulent misrepresentation.

## II. ATTORNEY'S FEES

On cross-appeal, the Wysockis assert that the trial court erred by not awarding them attorney's fees and costs of this action. Specifically, the Wysockis claim that the

trial court's findings support the conclusion that the Johnsons committed the crime of deception, as set forth in Indiana Code section 35-43-5-3(a)(2) (1996)[1], thereby entitling them to attorney's fees and costs pursuant to Indiana Code section 34-24-3-1 (1998)[2], the Crime Victims Relief Act.

Here, the trial court entered judgment for the Wysockis yet denied their claim for attorney's fees and costs pursuant to the Crime Victims Relief Act. Pursuant to our discussion on the fraudulent misrepresentation claim, we reverse the trial court's judgment in favor of the Wysockis and enter judgment in favor of the Johnsons on that claim. Therefore, we conclude there is no basis for an award of attorney's fees and costs to the Wysockis, and we affirm the trial court's denial of such. *See Steve Silveus Ins., Inc. v. Goshert*, 873 N.E.2d 165, 183 (Ind. Ct. App. 2007) (recognizing that when party prevails under the Crime Victims Relief Act and proves attorney's fees have been

---

[1] Indiana Code section 35-43-5-3 provides, in pertinent part:

> (a) A person who:
> . . .
> (2) knowingly or intentionally makes a false or misleading written statement with intent to obtain property, employment, or an educational opportunity
> . . .
> Commits deception, a Class A misdemeanor.

[2] Indiana Code section 34-24-3-1 provides, in pertinent part:

> If a person has an unpaid claim on a liability that is covered by IC 24-4.6-5 or suffers a pecuniary loss as a result of a violation of IC 35-43, IC 35-42-3-3, IC 35-42-3-4, or IC 35-45-9, the person may bring a civil action against the person who caused the loss for the following:
> . . .
> (2) The costs of the action.
> (3) A reasonable attorney's fee.
> . . .
> (7) All other reasonable costs of collection.

11

incurred, award of attorney's fees is mandatory, but holding that appellant not entitled to attorney's fees because judgment was not in its favor).

CONCLUSION

Based upon the foregoing discussion and authorities, we conclude the evidence was insufficient to show, and the trial court did not find, that the Johnsons had actual knowledge of the defects at the time the sales disclosure form was completed. Therefore, we reverse the trial court's judgment in favor of the Wysockis on their claim of fraudulent misrepresentation and direct the court to enter judgment in favor of the Johnsons. In addition, we affirm the trial court's denial of the Wysockis' request for attorney's fees and costs pursuant to the Crime Victims Relief Act.

Affirmed in part and reversed in part.

NAJAM, J., and BROWN, J., concur.