**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ALAN D. WILSON**
Kokomo, Indiana

ATTORNEY FOR APPELLEES:

**LOUIS D. EVANS**
Frankfort, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KARYL POGUE,                                  )
                                              )
    Appellant-Plaintiff,                    )
                                              )
        vs.                             )    No. 12A02-1107-PL-654
                                              )
KIM RAWLINGS and                              )
DEBORAH S. RAWLINGS,                          )
                                              )
    Appellees-Defendants.                   )

APPEAL FROM THE CLINTON SUPERIOR COURT
The Honorable Justin H. Hunter, Judge
Cause No. 12D01-1002-PL-72

**March 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

Karyl Pogue appeals the trial court's judgment in favor of Kim Rawlings and Deborah Rawlings on Pogue's complaint alleging fraud, following a bench trial. Pogue presents a single restated issue for our review, namely, whether the trial court erred when it entered judgment in favor of the Rawlingses.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The trial court set out the relevant facts in its judgment as follows:

> Buyer [Pogue] and Seller [the Rawlingses] executed a land contract (Exhibit A) on December 29, 2007[,] for the purchase and sale of residential real estate located in Clinton County, Indiana (hereafter "the Property"). The sales price was $80,000 and the seller[-]financed terms called for buyer to pay $8,000 up front and monthly payments of $550 including interest on principal at the rate of 5% per annum.

> The residence on the Property was over one hundred years old when sold to Buyer. Seller had previously lived in the residence between the years 1975 and 2003. Seller did not provide Buyer with a disclosure form required by Ind. Code §32-21-5-10. The land contract provided Buyer the right to enter and inspect the Property (paragraph 8c. of Exhibit A) but also declared that "Buyer has personally inspected the real estate and the improvements thereon and agrees to accept the same 'as is' in its present condition. Seller makes no warranties whatsoever to Buyer either express or implied." (Paragraph 12 of Exhibit A).

> Buyer took possession and lived in the home with her significant other[] beginning February[] 2008[,] and began making improvements. Buyer experienced significant problems after taking possession. The furnace stopped working shortly after Buyer moved into the property. By April[] 2008, Buyer noticed the water was brown. By summer[] 2008 the water pump failed. The water quality did not improve, and the well went dry by the end of 2008.

> Buyer shortly thereafter abandoned the Property, returned the keys to Seller and notified Seller that she was returning possession to him due to

several problems with the Property, all specified in a letter dated February 10, 2009 (Exhibit D).

One of the asserted problems was related to the description of the property being transferred. Prior to execution of the contract, Seller had advertised the Property for sale in the Kokomo Tribune. The property was advertised to include 2 acres. After execution of the land contract, Buyer discovered that the description contained only approximately 1.4 acres. . . .

A second asserted problem related to the location of the well [sic]. Before execution of the contract, Buyer asked Seller about the location of the well. Seller represented that the well was located near the south side of the house, and Seller pointed to an area close to the house. After Buyer began experiencing water quality problems in April[] 2008, she and close family members began to troubleshoot the problem. Eventually Buyer and family members dug to locate the well where Seller had previously pointed and never found it there. . . .

Appellant's App. at 4-5.

On February 5, 2010, Pogue filed a complaint against the Rawlingses alleging fraudulent inducement. In particular, Pogue alleged that the Rawlingses

made false and fraudulent representations to Karyl Pogue to induce her into signing the contract: [t]hat the real estate consisted of a two[-]acre plot, that the septic system would be repaired, that the well was located outside the utility room window where repairs could easily be made, that the kitchen window would be replaced, that the barn would be cleaned out, and that the house complied with local and state codes.

Id. at 7-8. And Pogue requested in relevant part "judgment against defendants of all sums paid to defendants pursuant to the contract, [and] for such additional sums that plaintiff has incurred to remedy defects in the home[.]" Id. at 8.

The trial court conducted a bench trial on June 16, 2011, and the court entered findings and conclusions sua sponte. In addition to the findings of fact set out above, the trial court stated:

3

At trial, Seller conceded that he intended to convey the visibly mowed ground, which was actually closer to 3 acres of ground. Contrary to the contention of Buyer, the Court finds that the discrepancy between the property description contained in the contract and the representation of Seller before execution of the contract was not based on fraud and serves as no foundation for Buyer to cancel the contract or make a claim for damages. Before abandoning the Property, Buyer never demanded a correction to conform the property description to the parties' understanding.

. . . At trial there was no credible evidence of the actual location of the well. It does not logically follow that the well went dry because it was not located where Seller said it was. Locating the well would clearly make water quality issues easier to diagnose, but Buyer never sought a professional for such assistance.

The elements of a cause of action in fraud are well established: To sustain an action for fraud it must be proven by a preponderance of the evidence that a material representation of a past or existing fact was made which was untrue and known to be untrue by the party making it, or else recklessly made, and that another party did in fact rely on the representation and was induced thereby to act to his detriment. Plymale v. Upright, [] 419 N.E.2d 756 ([Ind. Ct. App. ]1981).

In the present, the Court finds that Buyer has not proved that Seller made a material misrepresentation of fact upon which they relied to their detriment. While it's true that Seller misrepresented the location of the well [sic]. Indeed, it was not where he told Buyer it was located. There is no evidence, however, that the misrepresentation was material because there is no evidence for the Court to conclude that the well went dry because it was in a location different than the location represented to Buyer.

In connection with the weak floor joists, the Court finds no evidence that Seller ever misrepresented the condition of any component of the house that would be categorized to include the floor joists. Again, Buyer neglected to exercise her right to inspect, accepted the property "AS IS," and moved in knowing that the property was over 100 years old.

The remaining reasons asserted by Buyer for abandoning the Property and the contract were related to an alleged breach of promises that were not performed, namely the Seller's failure to fix the septic, to repair a window, and to clean an outbuilding. A failed promise to perform an act is not a misrepresentation of a past or existing fact and will not sustain a cause of action for fraud.

4

IT IS THEREFORE ORDERED that Plaintiff shall take nothing by
way of her complaint and cause of action against Defendants.

Id. at 5-6.  This appeal ensued.

## DISCUSSION AND DECISION

The trial court entered findings of fact and conclusions thereon sua sponte.

Findings of fact entered by the trial court sua sponte

> control only as to the issues they cover, while a general judgment standard
> applies to any issue upon which the trial court has made no findings.  In
> reviewing the judgment, this court must determine whether the evidence
> supports the findings and whether the findings, in turn, support the
> conclusion and judgment.  We will reverse a judgment only when it is
> shown to be clearly erroneous, i.e., when the judgment is unsupported by
> the findings of fact and conclusions entered on the findings.  In order to
> determine that a finding or conclusion is clearly erroneous, an appellate
> court's review of the evidence must leave it with the firm conviction that a
> mistake has been made.  In determining the validity of the findings or
> judgment, we consider only the evidence favorable to the judgment and all
> reasonable inferences to be drawn therefrom, and we will not reweigh the
> evidence or assess the credibility of witnesses.  In the case of a general
> judgment, a general judgment may be affirmed on any theory supported by
> the evidence presented at trial.

Borovilos Rest. Corp. II v. Lutheran Univ. Ass'n, 920 N.E.2d 759, 763 (Ind. Ct. App.

2010) (citations omitted), trans. denied.

Further, Pogue bore the burden of proof on her fraud claim and, thus, appeals

from a negative judgment.  We will not reverse a negative judgment unless it is contrary

to law.  Eppl v. DiGiacomo, 946 N.E.2d 646, 649 (Ind. Ct. App. 2011).  A judgment is

contrary to law when the evidence is without conflict and leads to but one conclusion, but

the trial court reached a different conclusion.  Id.

Pogue first contends that:

5

> [a]lthough the real estate disclosure statute and the case law are silent as to the consequences of failing to provide a real estate disclosure form as in our case, failure to do so is obviously a statutory violation. Rawlings cannot be allowed to benefit from his failure to comply with his statutory obligation to provide a written disclosure. Sellers can be held liable for omissions on the sales disclosure form. Here, Rawlings omitted everything by failing to provide a disclosure form, and, thus should be held liable. In this case, liability means a return of Pogue's $8,000 down payment.

Brief of Appellant at 11 (emphasis added, citation omitted). At trial, however, Pogue argued that the Rawlingses violated the statute when they did not give her a disclosure form and that the statutory violation "requires Mr. Rawlings to repay Ms. Pogue for the money she put in to remedy those defects that weren't disclosed." Transcript at 87.

In support of her contention on this issue, Pogue cites to this court's recent opinion in Vanderwier v. Baker, 937 N.E.2d 396 (Ind. Ct. App. 2010). In Vanderwier, the home sellers completed a disclosure form under the statute and stated in relevant part that "during severe rain they had 'minor garage seepage.' " Id. at 397. But after the buyers moved in, the lower level of the house flooded, and in the course of making repairs, the buyers discovered evidence of prior water damage, including "water marks on the walls and rotted boards." Id. The buyers sued, and the trial court entered judgment in favor of the buyers after a bench trial.

On appeal, we adopted this court's opinion in Hizer v. Holt, 937 N.E.2d 1 (Ind. Ct. App. 2010), "in its entirety." Vanderwier, 937 N.E.2d at 401. In Hizer, we held, in relevant part, that "sellers can be held liable for errors, inaccuracies, or omissions on the Sales Disclosure Form if the seller has actual knowledge of the defect." 937 N.E.2d at 7. Thus, in Hizer, we concluded that Indiana Code Chapter 32-21-5 "abrogates any interpretation of the common law that might allow sellers to make written

6

misrepresentations with impunity regarding the items that must be disclosed to the buyer on the Sales Disclosure Form[.]" Id.

In essence, Pogue asks us to hold that the Rawlingses' failure to provide a disclosure form is, by itself, grounds for rescission under the reasoning in Vanderwier. But, as the Rawlingses correctly point out, Indiana Code Section 32-21-5-10 expressly states that "[a]fter closing, the failure of the owner to deliver a disclosure statement form to the buyer does not by itself invalidate a real estate transaction." Further, a misrepresentation or omission in a disclosure form, which may support a fraud claim, is not equivalent to providing no form at all. We find Vanderwier inapposite here.

Pogue also contends, without citation to the record, that the evidence shows that Mr. Rawlings misrepresented the location of the well and whether there had been any problems with the "water system." Brief of Appellant at 11. To prevail in a cause of action for fraudulent misrepresentation, Pogue had to prove that (1) the Rawlingses made false statements of past or existing material facts; (2) the Rawlingses made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; (3) the Rawlingses made the statements to induce Pogue to act upon them; (4) Pogue justifiably relied and acted upon the statements; and (5) Pogue suffered injury. See Vanderwier, 937 N.E.2d at 398.

The trial court found in relevant part:

At trial there was no credible evidence of the actual location of the well. It does not logically follow that the well went dry because it was not located where Seller said it was. Locating the well would clearly make water quality issues easier to diagnose, but Buyer never sought a professional for such assistance.

7

* * *

In the present, the Court finds that Buyer has not proved that Seller made a <u>material</u> misrepresentation of fact upon which they relied to their detriment. While it's true that Seller misrepresented the location of the well [sic]. Indeed, it was not where he told Buyer it was located. There is no evidence, however, that the misrepresentation was material because there is no evidence for the Court to conclude that the well went dry because it was in a location different than the location represented to Buyer.

Appellant's App. at 5-6 (emphasis original). Pogue's argument on appeal amounts to a request that we reweigh the evidence, which we will not do. And the trial court's reasoning based on the evidence before the court is persuasive. There is no error on this issue.

Finally, Pogue contends that, given that "neither of the parties knew the exact amount of land being conveyed" at the time of entering the contract, rescission is warranted under the doctrine of mutual mistake. Brief of Appellant at 11. But Pogue did not make that argument to the trial court. Rather, at trial, Pogue argued the alleged acreage dispute in the context of her fraud claim. Accordingly, the issue is waived. <u>See</u>, <u>e.g.</u>, <u>McGill v. Long</u>, 801 N.E.2d 678, 688 (Ind. Ct. App. 2004) (holding failure to raise class action tolling argument to trial court waived that issue on appeal), <u>trans. denied</u>.

Affirmed.

ROBB, C.J., and VAIDIK, J., concur.