ATTORNEY FOR APPELLANTS
Katherine A. Brown-Henry
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
Shaun T. Olsen
Merrillville, Indiana



FILED

Jun 25 2013, 10:51 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 45S04-1211-CT-634

BARBARA A. JOHNSON AND WILLIAM T.
JOHNSON, BOTH INDIVIDUALLY AND AS
TRUSTEES OF THE BARBARA A. JOHNSON
LIVING TRUST DATED 12-17-1996,

*Appellants (Defendants below),*

v.

JOSEPH WYSOCKI AND M. CARMEN
WYSOCKI,

*Appellees (Plaintiffs below).*

Appeal from the Lake Superior Court, No. 45D04-0805-CT-00092
The Honorable Gerald N. Svetanoff, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A04-1111-CT-00610

**June 25, 2013**

**David, Justice.**

The owners of a home sold it after completing Indiana's statutory disclosure forms, attesting to the home's condition. Shortly after moving in, the buyers discovered a number of defects that required considerable expense to remedy. The buyers sued the former owners,

alleging fraudulent misrepresentation.  The question is whether Indiana's Disclosure Statutes create such a claim or if the common law still prevails and the principle of caveat emptor effectively ends the buyers' case.  Today we hold that the General Assembly's adoption of the Disclosure Statutes abrogated our common law jurisprudence for those transactions falling within their scope.

**Facts and Procedural History**

In 1973, William and Barbara Johnson purchased a single-family home in Lake County, Indiana.  In 1996, the Johnsons established the Barbara A. Johnson Living Trust and deeded the property to the Trust.  They lived in the home continually, with William Johnson doing most renovation work that arose.

In 2006, the Trust sold the property to Joseph and M. Carmen Wysocki for $235,000.  Prior to finalizing the purchase agreement, Barbara Johnson—in her position as trustee— executed a Seller's Residential Real Estate Sales Disclosure Form in which she averred that there were no violations of applicable building codes, that all work had been done with a building permit when required, that there were no foundational or structural problems, and that there were no issues with moisture, water, or roof leakage.  The Wysockis acknowledged and signed the Disclosure Form on July 11, 2006.  The next day they signed a purchase agreement for the property, electing in that agreement to obtain their own independent inspection before closing.

The Wysockis' independent inspection noted no roof leaks, major deficiencies, electrical issues, or structural defects.  However, it was limited to "readily accessible areas of the building" and "visual observations of apparent conditions existing only at the time of the inspections." (App. at 84.)  "Latent and concealed defects and deficiencies" were excluded.  (App. at 84.)  The Wysockis then waived any further independent inspections and agreed to accept the property in the "as is" condition as reported in the inspection.  Closing occurred on July 28, 2006.

2

Shortly after taking possession, the Wysockis began noticing issues with the property. At the first substantial rain, they discovered water leaking into the garage and cascading down the wall of their front porch. That fall, when they closed the swimming pool for the season, they discovered electrical issues with the pool system. An electrical inspector for the City of Crown Point found numerous electrical code violations in the wiring to the pool, and the repair necessitated going under the property's screened-in rear patio. While under the patio, the Wysockis discovered that the patio's structural supports appeared to be resting on bare earth.

The Wysockis then hired a consulting engineer to examine the property. He noted a broken or deflected beam in the front porch that needed to be replaced and that the roof intersection of the porch and garage did not come together properly, with a number of defects that would cause water leakage from that point. Additionally, he noted defects in the attic above the garage—including an improperly cut ceiling joist and water damage directly below the improper roof intersection. Below the screened-in patio, the engineer found that many of the deck posts were resting on the ground and beginning to decay; others did not reach the ground at all and were instead resting on shims of concrete blocks and other materials. The Wysockis spent $1200 to repair the electrical service to the pool, $3494.74 to repair the roof intersection, and had estimates of $2786.86 to repair the broken front beam and $6324.54 to repair the patio supports.

The Wysockis filed suit against the Johnsons individually and as trustees of the Trust. Count I of their complaint alleged fraud arising from the Johnsons' failure to disclose the defects discovered by the Wysockis after closing. Count II alleged a breach of contract or, alternatively, conversion arising out of the Johnsons' removal of pump systems connected to the pool and several landscaping ponds. They sought compensatory damages and pursuant to the Indiana Crime Victims Relief Statute, treble damages, attorney fees, costs, and interest.

The trial court granted summary judgment in favor of the Johnsons with respect to Count II of the Wysockis' complaint. A bench trial was held on Count I, with the trial court finding the Johnsons liable for the defective electrical service to the pool, the roofing above the front porch,

the front porch beam, and the screened-in patio supports. It awarded damages in the amount of $13,805.95, but denied their request for relief under the Indiana Crime Victims Relief Statute. The Wysockis filed a motion to correct errors seeking an additional $13,500 in attorney and expert fees. The trial court denied their motion and both parties appealed.

The Court of Appeals, in an unpublished memorandum decision, affirmed in part and reversed in part. Johnson v. Wysocki, 2012 WL 3067898 (Ind. Ct. App. July 30, 2012). It found that the Wysockis failed to show that the Johnsons had actual knowledge of the defects and so reversed the trial court's judgment in favor of the Wysockis. Id. at *5. It therefore also affirmed the trial court's denial of relief under the Indiana Crime Victims Relief Statute. Id.

We granted transfer, 978 N.E.2d 416 (Ind. 2012) (table), thereby vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).

## Standard of Review

When a case proceeds to trial and the court enters findings of fact in support of its judgment, we will not set aside those findings of fact or that judgment unless they are clearly erroneous. Woodruff v. Ind. Family and Social Serv. Admin., 964 N.E.2d 784, 790 (Ind. 2012); see Ind. Trial Rule 52(A). Findings of fact are only clearly erroneous if there is no factual support for them in the record whatsoever, either directly or by inference. Woodruff, 964 N.E.2d at 790; Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). A judgment is only clearly erroneous "if it applies the wrong legal standard to properly found facts." Id. (quoting Nichols v. Minnick, 885 N.E.2d 1, 3 (Ind. 2008)). In either case, we must be left "with the firm conviction that a mistake has been made." Yanoff, 688 N.E.2d at 1262.

4

## I. Caveat Emptor and Indiana's Disclosure Statutes

To succeed in an ordinary claim for fraudulent misrepresentation, the Wysockis would be required to prove by a preponderance of the evidence that a "(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." Reed v. Reid, 980 N.E.2d 277, 292 (Ind. 2012) (quoting Rice v. Strunk, 670 N.E.2d 1280, 1289 (Ind. 1996)). Their particular claim, however, arises from the sale of real property—a body of law drawing upon a number of different sources.

With respect to the sale of property, the rule of law in this state has long been that "the purchaser has no right to rely upon the representations of the vendor as to the quality of the property, where he has a reasonable opportunity of examining the property and judging for himself as to its qualities." Cagney v. Cuson, 77 Ind. 494, 497 (1881). This is true even "[a]s to fraudulent representations operating as an inducement to the sale or exchange of property." Id. The rule loses its force, however, when the defect is not one that would be revealed by the reasonable inspection. See Shephard v. Goben, 142 Ind. 318, 319 (1895) (favorably citing jury instruction providing "that the vendor could not defeat a recovery by showing an inspection of the land, if it appeared that an inspection would not disclose the deceit in the alleged false representations").

Were this harsh rule—reflecting as it does our court's application of the "buyer beware" doctrine of caveat emptor—the only one to apply, the Wysockis might have no claim whatsoever. They not only had the opportunity to have the property inspected, but they actually did so. And the record indicates that the inspector went into the attic and onto the roof, making it unlikely that those defects could not have been seen. But at the same time, some effort was required to remove flooring and lattice work in order to access the underside of the screened-in patio, casting doubt on whether those defects were visible to an ordinary inspection.

All the same, the sale here is also directly addressed by the provisions of Indiana's residential real estate sales disclosure statutes. Ind. Code chapter 32-21-5.[1] Section 7 of this chapter requires the Indiana Real Estate Commission to adopt a disclosure form for sellers like the Johnsons. Ind. Code § 32-21-5-7 (2008). The disclosure must contain

> the known condition of the following:
> (A) The foundation.
> (B) The mechanical systems.
> (C) The roof.
> (D) The structure.
> (E) The water and sewer systems.
> (F) Additions that may require improvements to the sewage disposal system.
> (G) Other areas that the Indiana real estate commission determines are appropriate.

Ind. Code § 32-21-5-7(1). This form must be completed, signed, and submitted to the prospective buyer before an offer for sale is accepted. Ind. Code § 32-21-5-10 (2008). However, the form "is not a warranty by the owner or the owner's agent, if any, and the disclosure form may not be used as a substitute for any inspections or warranties that the prospective buyer or owner may later obtain." Ind. Code § 32-21-5-9 (2008). The statutes go on to expressly limit any potential liability that a seller may have as a result of defects discovered by a buyer after the sale has been completed:

> The owner is not liable for any error, inaccuracy, or omission of any information required to be delivered to the prospective buyer under this chapter if:
>
> (1) the error, inaccuracy, or omission was not within the actual knowledge of the owner or was based on information provided by a public agency or by another person with a professional license or

---

[1] The Disclosure Statutes only apply to certain real estate transactions. <u>See</u> Ind. Code § 32-21-5-1 (2008). But the parties do not dispute that they apply here.

6

> special knowledge who provided a written or oral report or opinion that the owner reasonably believed to be correct; and
>
> (2) the owner was not negligent in obtaining information from a third party and transmitting the information.

Ind. Code § 32-21-5-11 (2008).

The impact of these statutes on our common law interpretation of the caveat emptor doctrine—and the extent, if any, to which that doctrine still survives—is a matter of some debate.

For their part, the Johnsons concede that the Disclosure Statutes are an exception to caveat emptor, but point us to Indiana Code § 32-21-5-9, which they label the "Warning Provision," and argue that if a buyer does not obtain an inspection in reliance on statements made in the Disclosure Form, and a defect later is discovered that should have been disclosed, then those buyers may bring a claim for fraudulent misrepresentation. (Appellant's Br. at 28.) They see a two-step process in such cases: the buyers must first prove that the seller had actual knowledge of the defect, and second, that they did not have an inspection out of reliance on the Disclosure Form or that an inspection would not have revealed the defect. (Appellant's Br. at 29.) "However if a buyer obtains an inspection and then decides to close on the property, then I.C. § 32-21-5-9's Warning Provision is invoked and the buyer can only rely on the Disclosure Form to make the offer, but not to purchase the property." (Appellant's Br. at 28.) We cannot agree with their two-step approach or their view of section 32-21-5-9.

First, the proposed two-step approach for cases where the buyer does not obtain an inspection adds an element of reliance that does not exist in the Disclosure Statutes. Nothing in section 32-21-5-11 limits the seller's liability by requiring a showing of reliance, and as we explain below, the Disclosure Statutes actually presume reliance for certain aspects of a home.

Second, we do not see the so-called Warning Provision as vitiating a seller's obligation to be truthful just because the buyer obtains an independent inspection. That provision states that the disclosure form "is not a warranty by the owner," nor may the disclosure form be used "as a

substitute for any inspections or warranties that the prospective buyer or owner may later obtain." Ind. Code § 32-21-5-9. But just because the statements made on the disclosure form are not warranties does not mean they are not actionable representations—the two terms mean different things and imply different legal consequences.

"A warranty is a statement of fact made or implied by one party to a contract to the other party which, although 'collateral to the principle purposes of the contract,' is an element of the contract and part of the consideration for the transaction." Tanya Marsh and Robert Solloway, Let the Seller Beware: The Slow Demise of Caveat Emptor in Real Property Transactions and Other Recent Developments in Indiana Real Property Law, 38 Ind. L. Rev. 1317, 1321 (2005) (quoting McCarty v. Williams, 58 Ind. App. 440, 108 N.E. 370 (1915)). "A representation, then, is a statement of fact that does not rise to the level of a warranty and an action for recovery for misrepresentations lies in tort, i.e. fraud." Id. Thus, the difference between the two terms lies in the method of recovery: for breach of warranty, one need only prove that the statement was made and was false; for misrepresentation one must prove all the elements we listed above. Id.

Clearly the Disclosure Statutes do not intend to convert the owner's disclosures into warranties that are embodied as part of the contract and consideration. Ind. Code § 32-21-5-9; cf. Ind. Code § 32-21-5-7(3) (requiring language on Disclosure Form notifying parties that "information is for disclosure only and *is not intended to be a part of any contract between the buyer and owner*") (emphasis added). However, that does not mean the owner's disclosures are not still representations—in fact, just the opposite is implied. See id. (requiring language on Disclosure Form notifying parties that "*representations* in this form are the *representations* of the owner") (emphasis added). In short, to the extent the statutes create liability for the seller for fraudulently misrepresenting the condition of the home on the Disclosure Form, the Warning Provision has no impact whatsoever beyond barring an additional claim for breach of warranty.

The Court of Appeals is trending in a different direction. In Dickerson v. Strand, 904 N.E.2d 711 (Ind. Ct. App. 2009), two individuals purchased a home despite an inspection report indicating visual evidence of termite activity along the foundation walls and sill plate. Five years

later, in preparation for putting the home back on the market, they had a second inspection. This inspection also noted termite damage in the foundation and sill plates of the home. An interested couple signed a purchase agreement for the home, which included a promise by the sellers to repair the damage noted in the second inspection and provided the buyers with a right of termination should they have an independent inspection done that revealed major defects that the sellers were unwilling to repair. The sellers hired a contractor who installed braces under the termite-damaged joists and sill plates but did not reinforce, repair, or replace the load-bearing elements themselves. At closing, the sellers checked "No" on a disclosure form question asking "Are there any structural problems with the buildings." The buyers never had an independent inspection done. Years later, as the buyers were having their siding replaced, their contractor found significant termite damage—specifically, the sill plate around the home's foundation was nearly destroyed.

The buyers sued, alleging that the sellers committed fraud in falsely representing that there was no structural damage from the termites. Id. at 714. In a split opinion, the Court of Appeals affirmed the trial court's grant of summary judgment in favor of the sellers. Id. at 712–13. It based its decision primarily on our rule from Cagney which, "[t]hough we had to dust it off . . . is still good law, and the Dickersons offer us no way around it." Id. at 715. Clearly, the majority of the panel disagreed with the harshness of the result, encouraging us "to reevaluate the social value of a rule allowing a seller of property to lie with impunity as long as the prospective buyer had a reasonable opportunity to inspect the property." Id. at 716. Nevertheless, they felt bound by that rule—but did not examine the impact of the Disclosure Statutes.

Judge Vaidik dissented, though not from the majority's call for us to reevaluate the continued viability of Cagney. Id. at 716 (Vaidik, J., dissenting). In her view, the Disclosure Statutes related to "the kinds of defects that will most significantly affect the value and use of a home," and "our Legislature expressly contemplated that the disclosure form statute would create liability for sellers" under the circumstances set forth in Section 11. Id. at 717. She therefore concluded that "for transactions covered by § 32-21-5-1, Indiana's disclosure form statute abrogates the common law rule that buyers cannot rely upon sellers' representations

9

regarding the absence of defects in those things included in Ind. Code § 32-21-5-7(1) and places the onus on a seller to refrain from knowingly making misrepresentations about those conditions." Id.

As she saw it, the relevant question when addressing a claim like the one in Dickerson (or the one made by the Wysockis here) was "whether the seller of covered residential real estate *actually knew* about the property's defects when filling out the disclosure form." Id. at 718. Any other reading of the disclosure statutes "would contradict the Legislature's intent to protect buyers, in limited circumstances, as they purchase what is typically one's largest and most important asset: a home." Id.

Shortly thereafter, a different panel in Hizer v. Holt, 937 N.E.2d 1 (Ind. Ct. App. 2010), found the Dickerson dissent persuasive. In Hizer, the sellers completed a disclosure form stating that their home's plumbing and well were not defective, and that there were no issues with mold, moisture, or water in the basement. The sale closed, and the buyers later discovered significant mold damage and water leaks that had been crudely patched and covered over. When the buyers hired an inspector to estimate the damages, that inspector informed them that he had inspected the same home before—for different prospective buyers—and had identified and disclosed those conditions to both those other buyers and the sellers.

The Hizer panel leaned heavily on the Dickerson dissent's view of the Disclosure Statutes in reversing the trial court's award of summary judgment to the sellers. Id. at 6–8. "We cannot conceive of any reason that the General Assembly would require sellers to complete the Sales Disclosure Form if sellers cannot be held liable for fraudulently misrepresenting the condition of the property on the form." Id. at 7. "We believe that the General Assembly intended for a prospective buyer to rely on the seller's disclosure of known defects on the property when making his or her offer to purchase the property" and "[b]y implication, therefore, the General Assembly contemplated that sellers can be held liable for errors, inaccuracies, or omissions on the Sales Disclosure Form if the seller has actual knowledge of the defect." Id. The panel expressly disagreed with the Dickerson majority and found that the Disclosure

10

Statutes abrogated "any interpretation of the common law that might allow sellers to make written misrepresentations with impunity regarding the items that must be disclosed to the buyer." Id.

This approach is continuing to gain momentum. See, e.g., Wise v. Hays, 943 N.E.2d 835, 842 (Ind. Ct. App. 2011) ("We agree with the Dickerson dissent, Hizer, and Vanderwier. For transactions covered by Chapter 32-21-5, a seller may be liable for any misrepresentation on the sales disclosure form if the seller had actual knowledge of that misrepresentation at the time the form was completed."); Vanderwier v. Baker, 937 N.E.2d 396, 401 (Ind. Ct. App. 2010) (expressly rejecting Dickerson majority and adopting Hizer position); see also Wysocki, 2012 WL 3067898 at *3. And at least insofar as the Disclosure Statutes go, we think it is correct.

We agree with the Dickerson dissent in seeing that the Disclosure Statutes create liability for sellers when they fail to fully or truthfully disclose the condition of those certain features of their property. See Dickerson, 904 N.E.2d at 717–18. Although the relevant section frames the issue in the inverse—explaining when the seller is *not* liable—the statute nevertheless clearly contemplates liability for sellers flowing from "any error, inaccuracy, or omission of any information required to be delivered" under the Disclosure Statutes when that error, accuracy, or omission was within the actual knowledge of the seller.[2] Ind. Code § 32-21-5-11. And while departing from the caveat emptor theory, this is actually less of a departure from the common law fraudulent misrepresentation arena than might appear at first blush.

---

[2] Provided that the seller's knowledge was not based on information from a public agency or individual who provided a report to the seller which the seller reasonably believed, and the seller was not negligent by failing to obtain such a report or information. See Ind. Code § 32-21-5-11(1), (2). We also agree that the relevant time period for examining liability under this statute is whether the seller had actual knowledge "at the time the form was completed." Wise, 943 N.E.2d at 842.

11

For example, the Disclosure Statutes require sellers of certain residential real estate to disclose the condition of (and existence of defects in) certain aspects of the property they have placed on the market. And once the seller undertakes to make those disclosures, it is fully in keeping with our common law that the disclosures must be full and truthful. Because when a buyer makes specific inquiries about the condition of a property, we already require the seller to "fully declare any and all problems associated with the subject of the inquiry." Fimbel v. DeClark, 695 N.E.2d 125, 127 (Ind. Ct. App. 1998), trans. denied. Also, once sellers disclose facts within their knowledge they must already "disclose the whole truth without concealing material facts." Thompson v. Best, 478 N.E.2d 79, 84 (Ind. Ct. App. 1985), trans. denied. The sellers may not partially disclose the facts as they understand them, creating a false impression in the buyer "by failing to fully reveal the true state of affairs," nor may they disclose only "those portions that would not spoil a sale of the house." Id.

Therefore, as we read the Disclosure Statutes we see a codification of these requirements. The General Assembly has simply relieved the buyer of needing to initiate a specific inquiry in order to get honest disclosure about significant features of a purchase and, by the same token, it has forced the seller's affirmative duty to initiate disclosure—and therefore full and honest disclosure—about those same features. In effect, the General Assembly has codified a portion of the normal home-buying back-and-forth between buyers and sellers, and in doing so streamlined the process with the aim of starting every such transaction on the same footing.

Moreover, this statutory liability avoids any reference to the significance of the error—or the significance of the defect later-discovered—as well as any reference to the buyer's reliance on the representation. But again we think this makes sense, for as Judge Vaidik aptly said, the statutory list of things that must be addressed incorporates "the kinds of defects that will most significantly affect the value and use of a home." Dickerson, 904 N.E.2d at 717. It is a list of features that are most significant and therefore most *material* for the average buyer—i.e. the

12

foundation, the mechanical systems, the roof, the structure, and the water systems. It is a list of features for which *all* buyers would reasonably rely upon a seller's disclosure even if the buyers had them inspected independently anyway.[3] As such, the Disclosure Statutes represent the General Assembly's reasonable presumption of what would otherwise be the materiality and reasonable reliance elements in an ordinary common law suit for fraudulent misrepresentation.[4]

Thus, for those types of residential real estate transactions to which they apply—and for the property features which are addressed within them—we hold that Indiana's Disclosure Statutes abrogated the common law principles originally set forth in Cagney. In such transactions, the seller may be liable for fraudulent misrepresentations made on the Disclosure Form when he or she had actual knowledge that the representation was false at the time he or she completed the form. But because statutes in derogation of common law are strictly construed, and we presume that the General Assembly is aware of the existing common law and does not intend to change it "beyond what the express terms of its enactments and fair implications allow," Town of Avon v. W. Cent. Conservancy Dist., 957 N.E.2d 598, 603 (Ind. 2011), we view our common law principles as being undisturbed for transactions falling outside the scope of the Disclosure Statutes.

---

[3] This view also reflects the General Assembly's inclusion of a provision insulating prospective buyers from liability if a buyer receives a Disclosure Form identifying a defect and, within two days of receipt, opts to rescind his or her offer—or even demands rescission of the contract itself if the offer has already been accepted. See Ind. Code § 32-21-5-13 (2008); cf. Stephenson v. Frazier, 399 N.E.2d 794, 798 (Ind. Ct. App. 1980) (rescission proper remedy when breach is material and goes to heart of contract), trans. denied.

[4] Although we would not say that this presumption is irrebutable. For example, if the buyers had an independent inspection that disclosed the same faults and the buyers purchased the property anyway, that might weigh against a presumption that they reasonably relied on the Disclosure Form—or that they viewed the condition as material. It would become a question of fact.

Here, the trial court found that "the issues for which the complaint has been made here existed for some time and *should have been obvious* to the Johnsons prior to the time that they sold the Property."   (App. at 15 (emphasis added).)   It therefore found them liable to the Wysockis for repairs to the electrical service lines below the back deck, repairs to the roofing of the front porch, repair of the deflected beam on the front porch, and repair to the structural supports of the back deck.

In a number of contexts, we have found that the element of actual knowledge can be inferred or "may be proven by circumstantial evidence notwithstanding the absence of a plaintiff's admission of such knowledge."  Beckett v. Clinton Prairie School Corp., 504 N.E.2d 552, 555 (Ind. 1987) (actual knowledge of particular risk an element of incurred risk defense); see also Williams v. Tharp, 914 N.E.2d 756, 766 (Ind. 2009) (actual knowledge of falsity vitiates qualified privilege for communicating with law enforcement in defamation action); Delta Tau Delta, Beta Alpha Chapter v. Johnson, 712 N.E.2d 968, 974 (Ind. 1999) (actual knowledge of intoxication an element of dram shop action).  The same is true here.

However, that is not the same as a finding that the issues "should have been obvious." The standard of "should have known" is lower than "actual knowledge."  See Stevens v. State, 691 N.E.2d 412, 431–32 (Ind. 1997) (noting that aggravator for killing police officer "required 'actual knowledge' on the part of the defendant, rather than the lesser 'should have known' standard") (citing Castor v. State, 587 N.E.2d 1281, 1290 (Ind. 1992)); Neal v. Cure, 937 N.E.2d 1227, 1233 (Ind. Ct. App. 2010) ("An 'actual knowledge' requirement cannot be satisfied by a showing a defendant 'should have known' or 'had reason to know.'"), trans. denied; Bailey v. State Farm Mut. Auto Ins. Co., 881 N.E.2d 996, 1003 (Ind. Ct. App. 2008) (negligent entrustment claim requires actual knowledge of driver's intoxication; evidence that owner should have known or could have known that driver was unfit is insufficient).  This means that the trial court here applied the wrong legal standard to the facts, even assuming that those facts are sufficiently supported by the record.  The judgment is therefore clearly erroneous, though we

14

acknowledge that the full scope and viability of the Wysocki's claim is something that we have set forth only today.

We decline to assess whether a finding of actual knowledge can be inferred from the facts and surrounding circumstances as reflected in the record before us. We neither weigh evidence nor assess witness credibility. <u>Rose Acre Farms, Inc. v. Greemann Real Estate</u>, 516 N.E.2d 1095, 1097 (Ind. Ct. App. 1987), <u>trans. denied</u>. Therefore in this case the wiser approach would be to allow the trial court to take the guidance set forth in this opinion and make his own determination first with the full benefit of having been able to assess and weigh the credibility of witnesses and evidence presented at trial.

**Conclusion**

We reverse the trial court and remand for new findings pursuant to this opinion.[5]

Dickson, C.J., Massa and Rush, JJ., concur.
Rucker, J., concurs in part and dissents in part with separate opinion.

---

[5] Because of this we do not need to address the issues raised in the Wysockis' cross-appeal.

**Rucker, J., concurring in part and dissenting in part.**

I fully concur with Part I of the majority opinion. I also concur with that portion of Part II declaring that the trial court "applied the wrong legal standard to the facts" of this case. Slip op. at 14. However, I disagree with the necessity of remanding this cause to the trial court for new findings. It is certainly true the trial court did not use the magic words "actual knowledge." But as recounted in the Facts section of the majority opinion, the record before us is more than sufficient to support the conclusion that the Johnsons had such knowledge of the various defects prior to the time they sold the property to the Wysockis. I would therefore affirm the judgment of the trial court in all respects and put this litigation to rest. Therefore, on this point I respectfully dissent.