## FOR PUBLICATION



**FILED**
Jan 31 2014, 9:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**EDWARD R. HANNON**
Steuerwald Hannon Zielinski & Witham, LLP
Danville, Indiana

ATTORNEYS FOR APPELLEES:

**MARGARET M. CHRISTENSEN**
**MICHAEL RYAN HARTMAN**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM E. BOEHRINGER, | ) | |
| CLEO A. BOEHRINGER, and the | ) | |
| CLEO A. BOEHRINGER TRUST, | ) | |
| | ) | |
| Appellants-Plaintiffs-Counterclaim Defendants, | ) | |
| | ) | |
| vs. | ) | No. 29A05-1303-PL-154 |
| | ) | |
| GREGORY J. WEBER and SUSAN M. WEBER, | ) | |
| | ) | |
| Appellees-Defendants-Counterclaim Plaintiffs. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
Cause No. 29D03-0904-PL-1619

**January 31, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

In 2006, Appellants-Plaintiffs-Counterclaim Defendants William and Cleo Boehringer and the Cleo A. Boehringer Trust (collectively, "the Boehringers") purchased a house ("the House") from Appellees-Defendants-Counterclaim Plaintiffs Gregory and Susan Weber ("the Webers"). Before the sale, the Webers indicated in a disclosure form that they had no knowledge of any hazardous conditions in the House. In 2007, the Boehringers discovered mold in the House, and in 2009 they filed a complaint against the Webers for fraudulently failing to disclose the presence of mold when they allegedly had actual knowledge of it. The Boehringers also sought rescission or compensatory damages on the basis of mutual mistake of fact. Finally, the Boehringers' complaint asserted claims against Homes by John McKenzie; Beazer Homes Indiana, LLP; and Trinity Homes, LLC ("the Builder"). The Webers asserted a counterclaim for costs and attorney's fees, a claim brought pursuant to the purchase agreement for the House, which specifically entitled the prevailing party in any litigation relating to that purchase agreement to recover such sums.

Both the Boehringers and Webers moved for summary judgment. The trial court denied the Boehringers' summary judgment motion relating to their fraudulent misrepresentation and mutual mistake claims, and the case proceeded to trial. Following a jury trial, judgment was entered in favor of the Webers on the Boehringers' claims, and the Webers were awarded $425,000.00 pursuant to their counterclaim.[1] The trial court denied the

---

[1] The Boehringers do not challenge the amount of the award to the Webers. Of course, were we to rule in the Boehringers' favor on the underlying claim, this award to the Webers would have to be reversed as well.

Boehringers' motion to correct error, and they now appeal. The Boehringers claim that the trial court erred in denying them summary judgment on their fraudulent misrepresentation claim and that, in the alternative, the evidence presented at trial cannot sustain the jury's verdict against them. Concluding that the trial court did not err in denying the Boehringers' summary judgment claim and that the evidence sustains the jury's verdict, we affirm.

## FACTS AND PROCEDURAL HISTORY

The House, built by the Builder and located in Fishers, is a one-story frame residence faced with a combination of rough stone veneer and horizontal composite siding planks. The House includes a full walk-out basement with poured concrete walls and a connected wood deck on the back. The Webers moved into the House in 1999 and, in the summer of 2006, began hearing reports of water intrusion in other nearby houses also built by the Builder. The Webers hired True Construction, Inc., to conduct an inspection of the House, which company President David Howell did on October 19, 2006. Howell's report detailed what in his estimation were several defects in the construction of the House, many—if not most—related to water control. *Inter alia*, Howell noted a lack of base flashing or weep holes in the House's stone veneer, a lack of flashing or weep holes under windows, flat window sills, a lack of flashing between the deck and exterior walls with resulting water damage, a downstairs window completely rotted due to water damage, and water damage to wood adjacent to windows. Howell's report did not mention mold.

On November 21, 2006, the Webers, by their attorney, sent a letter to the Builder seeking repair of damage to the House due to allegedly substandard construction. At

Builder's direction, the House was inspected again on December 20, 2006, by Thomas Schubert of Triad Associates, Inc. The report from the second inspection provided, in part, as follows:

a.) There was suspect black staining that was likely visible fungal growth on the Basement OSB band board located under the Nook area. There was water staining on the wood sill plate and wood studs located below the Nook area in the Basement. The suspect black staining and water staining were likely the result of an improperly flashed wood deck.

b.) There was paint chipping on the window stool of the Garage west wall south window at the time of the investigation. The paint damage was likely the result of a leaking window and/or condensation formation.

c.) There was suspect water damage to the trim boards located on the Chimney Chase. The suspect water damage was likely the result of water intrusion form improperly flashed trim boards.

d.) There were several exposed OSB band boards evident under the Nook bay window area. There was suspect black staining that was likely visible fungal growth on the OSB band boards under the Nook bay window area at the time of the investigation. The suspect black staining was likely the result of water intrusion from an improperly flashed wood deck.

e.) The wood deck was not properly flashed at several locations on the residence.

f.) There was suspect black staining on the gutter board location on the Recreation Room east wall at the time of the investigation. The suspect black staining was likely the result of water intrusion from an improperly installed gutter board and/or improperly flashed wood deck.

g.) Some horizontal trim boards were partially buried within landscape mulch beds.

h.) The "Z" flashing on some trim boards was not properly installed and/or extended on the residence.

i.) There were several areas around the perimeter of the residence where deteriorated caulking was evident. There were miter gaps evident at several locations around the residence.

j.) Some horizontal siding planks and trim boards had been removed and reinstalled and/or replaced. There were unpainted nail heads evident at these locations.

Plaintiff's Ex. 3 at 1-2. Schubert's report did not mention mold.

In March of 2007, Builder began remediation work on the House in order to address water intrusion issues. Soon thereafter, the Webers met with realtors with the intention of putting the House up for sale. On June 24, 2007, the Webers executed a "Seller's Residential Real Estate Sales Disclosure." To the following question on the sales disclosure, the Webers responded "no": "Have there been or are there any hazardous conditions on the property, such as methane gas, lead paint, radon gas in house or well, radioactive material, landfill, mineshaft, expansive soil, toxic materials, mold, other biological contaminants, asbestos insulation, or PCB's?" Plaintiff's Ex. 4 at 2. In addition to the fact that neither the Howell nor Schubert inspections discovered mold, nobody mentioned mold to the Webers during a February walkthrough or during remediation of the House.

On July 12, 2007, the Boehringers made an offer on the House and agreed to terms of sale with the Webers. The sale closed on August 30, 2007. In the spring of 2008, William noticed black material on a windowsill in his home office. In April of 2008, testing confirmed the presence of mold spores on window frames in William's office, the master bathroom, and the master bedroom. Additional testing revealed the presence of mold elsewhere in the House.

On April 17, 2009, the Boehringers filed a complaint against the Webers, Builder, Homes by John McKenzie, and Beazer Homes. The complaint raised claims of fraudulent misrepresentation regarding the presence of mold in the House and mutual mistake of fact against the Webers as well as violation of the implied warranty of habitability against Builder. On June 22, 2009, the Webers responded to the Boehringers' complaint and

counterclaimed for costs and reasonable attorney's fees for defending the Boehringers' complaint. Paragraph 20 of the purchase agreement for the House provides that "[a]ny party to this agreement who is the prevailing party in any legal or equitable proceeding against any other party brought under or with relation to the Agreement or transaction shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party." Appellant's App. p. 114. On July 29, 2010, the Webers moved for summary judgment. On October 21, 2010, the Boehringers cross-moved for summary judgment against the Webers. On April 25, 2011, the trial court granted the Webers' summary judgment motion in part[2] and denied it in part and denied the Boehringers' summary judgment cross-motion in full.

On October 21, 2011, the Boehringers dismissed their claims against Builder. On December 9, 2011, the Webers filed a third-party claim against Builder. The jury trial began on December 17, 2012. Following trial, the jury rendered verdicts in favor of the Webers on the Boehringers' claims, in favor of the Webers in the amount of $425,000.00 on the Webers counterclaim, and in favor of Builder on the Webers' third-party claim. On February 26, 2013, the trial court denied the Boehringers' motion to correct error.

## DISCUSSION AND DECISION

### I.  Sales Disclosure Law in Indiana

---

[2] The trial court granted summary judgment in favor of the Webers on claims related to a pontoon boat the Boehringers purchased from them and statements allegedly made regarding the removal of a neighbor's tree. These claims are not at issue on appeal.

Both of the Boehringers' claims hinge on the Webers' alleged failure to comply with Indiana's sales disclosure laws, found at Indiana Code chapter 32-21-5, giving rise to a claim of fraudulent misrepresentation. Section 7 of that chapter requires the Indiana Real Estate Commission to adopt a disclosure form for sellers of a single-unit residence. Ind. Code § 32-21-5-7. The disclosure must contain

> the known condition of the following:
> (A) The foundation.
> (B) The mechanical systems.
> (C) The roof.
> (D) The structure.
> (E) The water and sewer systems.
> (F) Additions that may require improvements to the sewage disposal system.
> (G) Other areas that the Indiana real estate commission determines are appropriate.

Ind. Code § 32-21-5-7(1). This form must be completed, signed, and submitted to the prospective buyer before an offer for sale is accepted. Ind. Code § 32-21-5-10. However, the form "is not a warranty by the owner or the owner's agent, if any, and the disclosure form may not be used as a substitute for any inspections or warranties that the prospective buyer or owner may later obtain." Ind. Code § 32-21-5-9. Moreover,

> [t]he owner is not liable for any error, inaccuracy, or omission of any information required to be delivered to the prospective buyer under this chapter if:
> (1) the error, inaccuracy, or omission was not within the *actual knowledge* of the owner or was based on information provided by a public agency or by another person with a professional license or special knowledge who provided a written or oral report or opinion that the owner reasonably believed to be correct; and
> (2) the owner was not negligent in obtaining information from a third party and transmitting the information.

7

Ind. Code § 32-21-5-11 (emphasis added). As the Indiana Supreme Court has recently made clear, *actual knowledge* must be shown in order to show a failure to comply with the sales disclosure statutes—a showing that an owner failed to disclose a defect of which he *should have known* is not sufficient. *Johnson v. Wysocki*, 990 N.E.2d 456, 466-67 (Ind. 2013).

Failure to comply with Indiana's sales disclosure statutes gives rise to a cause of action for fraudulent misrepresentation. *Id.* at 460-61. In order to prevail in a cause of action for fraudulent misrepresentation, the Boehringers had to establish that 1) the Webers made false statements of past or existing material facts; 2) the Webers made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; 3) the Webers made the statements to induce the Boehringer to act upon them; 4) the Boehringers justifiably relied and acted upon the statements; and 5) the Boehringers suffered injury. *Dickerson v. Strand*, 904 N.E.2d 711, 715 (Ind. Ct. App. 2009) (citing *Verrall v. Machura*, 810 N.E.2d 1159, 1162 (Ind. Ct. App. 2004), *trans. denied*).

## II. Whether the Trial Court Erred in Denying the Boehringers' Summary Judgment Motion on their Fraudulent Misrepresentation Claim

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts

8

negate at least one element of the other party's claim. *Id*. Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id*. The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id*.

The Boehringers claim, *inter alia*, that the designated evidence establishes that the Webers had actual knowledge of the presence of mold in the House before sale and that they therefore committed fraudulent misrepresentation when they indicated on the sales disclosure form that they knew of no existing hazardous conditions in the House. Because we conclude that the designated evidence does not establish that the Webers actually knew of the presence of hazardous mold in the House when they executed the sales disclosure, we need not address the Boehringers' other claims.

The undisputed designated evidence indicates that the House was inspected by Howell in October of 2006 and by Schubert in January of 2007, and that neither inspector indicated the presence of mold. Moreover, both Webers submitted affidavits indicating that neither detected any evidence of mold while living in the House. If believed, this evidence establishes a lack of actual knowledge of mold on the part of the Webers, which is required. *See Johnson*, 990 N.E.2d at 466-67. At the very least, this designated evidence generates a genuine issue of material fact on the question of actual knowledge, precluding the entry of summary judgment in favor of the Boehringers on their fraudulent misrepresentation claim. The trial court did not err in denying the Boehringers summary judgment motion.

### III. Whether the Evidence Supports the Jury's Verdict in Favor of the Webers on the Boehringers' Fraudulent Misrepresentation Claim

The Boehringers also contend that, even if the trial court correctly denied their summary judgment motion against the Webers, the evidence at trial does not support the jury's verdict against them. "It has long been the rule of law that in determining the sufficiency of the evidence we review all of the evidence and in its consideration we accept as true all facts and all proper inferences which the jury might draw from the facts that are calculated to sustain the verdict." *N.Y., C. & St. L. R. Co. v. Mercantile Nat'l Bank of Hammond*, 130 Ind. App. 638, 652, 165 N.E.2d 382, 389 (1960); *see also Midwest Oil Co. v. Storey*, 134 Ind. App. 137, 150, 178 N.E.2d 468, 474 (1961). "This court does not concern itself with conflicts in the evidence or the credibility of the witnesses." *Bank of Hammond*, 130 Ind. App. at 652, 165 N.E.2d at 389; *see also Storey*, 134 Ind. App. at 150, 178 N.E.2d at 474. When the sufficiency of the evidence is questioned on appeal, "we do not weigh the evidence, but we examine the record to see if there is any evidence, or any reasonable or logical inference which may be drawn from the evidence, which if believed by the jury would sustain the verdict." *Bank of Hammond*, 130 Ind. App. at 652, 165 N.E.2d at 390 (citing *Butterfield v. Trittipo*, 67 Ind. 338, 342 (1897); *Ind. Ins. Co. v. Handlon*, 216 Ind. 442, 446, 24 N.E.2d 1003, 1005 (1940)).

Both the Howell and Schubert reports, which, as previously mentioned, did not contain any mention of mold in the House, were admitted at trial. In addition, William testified that no inspector ever told him that there was mold in the House, mold was not discussed during a February of 2007 walkthrough with the Builder, and mold was not discussed during the March of 2007 remediation. Finally, Susan testified that nobody ever

10

told her that the House had a mold infestation prior to the sale. This evidence, which the jury was entitled to believe and apparently did, establishes that the Webers lacked actual knowledge of mold in the House when they executed the sales disclosure, even assuming, *arguendo*, that any existed at the time. The Boehringers' argument in this regard is nothing more than an invitation to reweigh the evidence, which we will not do. The evidence presented at trial sustains that jury's verdict.

The judgment of the trial court is affirmed.

MATHIAS, J., and PYLE, J., concur.

11